## 9050

### DICKS v. CASSELS, AS EX'R, *ET AL.*

(84 S. E. 878.)

MUTUAL WILLS. CONTRACTS. EVIDENCE. WITNESSES. APPEAL AND ERROR. UNDUE INFLUENCE.

1. MUTUAL WILLS—CONTRACTS—EVIDENCE.—To establish a contract for the making of mutual wills by parties, one of whom is deceased, the evidence must be definite, certain, clear and convincing.

2. EVIDENCE—WITNESSES—CONTRACTS.—The testimony of the survivor is incompetent under Code Civil Proc., sec. 438, to establish against a decedent, an alleged contract between them, to make mutual wills in favor of each other.

3. APPEAL AND ERROR—CHANCERY CASES—REVIEW.—It being made to appear on appeal in an action for specific performance of a contract to make mutual wills that the decree is against the clear preponderance of the evidence, it will be reversed.

4. APPEAL AND ERROR—UNDUE INFLUENCE—REVIEWS.—Where a natural motive for making a will appears from the evidence and the finding on Circuit that a testator was incapacitated and unduly influenced to make the will, is unsupported by the evidence, such finding will be reversed on appeal.

Before SEASE, J., Aiken, April, 1914.    Reversed.

Action by James J. Dicks, plaintiff-respondent, against Homer C. Cassels, as executor of the will of L. F. Dicks, Sarah A. Cassels, Hattie M. Dicks, Polly Scott and James Larry, defendants-appellants, for the specific performance of an alleged contract between the plaintiff and L. F. Dicks, defendants' testator, for the making of mutual wills. The facts are stated in the opinion.

From a decree in favor of the plaintiffs, all the defendants, except Hattie M. Dicks, who had made default, appeal upon the following grounds and exceptions:

Please take notice that the defendants, Homer C. Cassels, as executor of the will of L. F. Dicks; Sarah A. Cassels, Polly Scott and James Larry, appeal from the decree of his Honor, Judge T. S. Sease, filed in the above entitled action to the Supreme Court of the State of South Carolina, and will ask in the Supreme Court for a reversal of the said Circuit decree upon the following grounds and exceptions:

1st. That his Honor, Judge Sease, who tried this case, erred, it is respectfully submitted, in finding from the evidence as follows: "I therefore hold that there was a mutual contract existing, whereby one brother was to be a beneficiary of the other in the event of survivorship, and that the plaintiff herein having survived, he is entitled to become

FOOTNOTE.—As to specific performance of contract to make will, see note in 31 A. &. E. Ann. Cas. 1914a, 399 to 408.

beneficiary of the deceased estate," the error being that his Honor should have found that there was no contract existing between the plaintiff, J. J. Dicks, and his deceased brother, L. F. Dicks, for the execution of mutual, irrevocable wills, and that the wills of September 11, 1890, were not executed under a contract, or agreement or understanding between said brothers for the execution of mutual, irrevocable wills, and therefore, that the survivorship of the plaintiff did not entitle him to the estate left by the deceased, L. F. Dicks.

2d. That his Honor, Judge Sease, erred, it is respectfully submitted, in finding "that the preponderance of the evidence establishes that the two wills between the said brothers were executed under a mutual contract making the survivor the beneficiary of the estate of the deceased," whereas, he should have found from the preponderance of the evidence that the two wills in question were not executed under a contract for the execution of mutual, irrevocable wills, or under a contract making the survivor of said brothers the beneficiary of the estate of the other.

3d. That his Honor, Judge Sease, it is respectfully submitted, erred in finding plaintiff entitled to specific performance of contract alleged in his complaint and in decreeing "that the executors under the will of said L. F. Dicks in favor of said Mrs. Cassels and Miss Hattie Dicks be, and they are hereby, required to turn over to the plaintiff all and singular the entire estate of which L. F. Dicks died, seized and possessed after payment of the legally established debts due by said L. F. Dicks," the error being that from the evidence before his Honor he should have decided that there was no contract for mutual, irrevocable wills between the plaintiff and his brother, L. F. Dicks, and that he should have decreed that the said remainder of the estate of said L. F. Dicks should be paid out to the four beneficiaries named in said will, to wit, the defendants, Sarah A. Cassels, Hattie M. Dicks, Polly Scott and James Larry, in the manner the

executor of said will is instructed by the will to pay out said estate.

4th. That his Honor, Judge Sease, it is respectfully submitted, erred in finding that "the question of the probation of the last will (meaning the last will of L. F. Dicks) can not enter into this case," and then further finding that undue and improper influences were brought to bear upon the said L. F. Dicks by the defendant, Sarah A. Cassels, and those interested in her, finding also that the said L. F. Dicks was on such occasion or occasions, mentally incapacitated, and because thereof, was influenced in manner injurious to plaintiff, the error being that his Honor should have held that the proceedings for the probation in due form of law of the said will had and held in the Court of probate for Aiken county, the parties to this action being parties to that action, adjudicated all questions of the mental capacity of, or alleged undue and improper influence upon, said L. F. Dicks, injurious in any way to the plaintiff in this action.

5th. That his Honor, Judge Sease, it is respectfully submitted, erred in finding that at the time of the execution of the last will of the said L. F. Dicks "that no one was permitted to see him on business except his said half sister (meaning the defendant, Mrs. Sarah A. Cassels), her husband and her brother-in-law," whereas the evidence does not sustain such finding.

6th. That his Honor, Judge Sease, it is respectfully submitted, erred in finding that "the testimony discloses a concerted purpose to so sequester him (meaning the deceased, L. F. Dicks) that the influence of his half sister (meaning the defendant, Mrs. Sarah A. Cassels), and her kindnesses and administrations and sweet cajoleries would so influence him that he might forget, and he did forget, the obligations he had with his brother," whereas the evidence does not sustain such finding.

7th. That his Honor, Judge Sease, it is respectfully submitted, erred in finding that the deceased, L. F. Dicks,

"actually delivered up to the plaintiff, by. him to be kept in the safe of the mercantile business in Augusta," the will which said L. F. Dicks executed on September 11, 1890, whereas the evidence does not sustain such finding.

8th. That his Honor, Judge Sease, it is respectfully submitted, erred in finding that the plaintiff, J. J. Dicks, relied in any way upon the wills of September 11, 1890, being mutual wills, but to the contrary, his Honor should have found that the plaintiff did not rely upon said wills being mutual wills, but had forgotten all about them until they were brought to his attention by another.

9th. That his Honor, Judge Sease, it is respectfully submitted, erred in finding that the said wills of September 11, 1890, were made when the plaintiff and his brother, L. F. Dicks, were in their waning years, whereas he should have found at the date of the execution of said wills the said two brothers were comparatively young men, and he also should have found that the said wills were not mutual, irrevocable wills, were without consideration, and were only simultaneous wills, each of the said brothers having the right to revoke.

10th. That his Honor, Judge Sease, it is respectfully submitted, erred in finding that the deceased, L. F. Dicks, in any statements made by him after the execution of said wills of September 11, 1890, ever recognized the same as mutual, irrevocable wills, but that to the contrary he should have found that any statements made by the said L. F. Dicks concerning the said wills were clearly consistent with the idea that the wills were only intended as simultaneous wills and not as mutual, irrevocable wills.

11th. That his Honor, Judge Sease, it is respectfully submitted, erred in finding that the deceased, L. F. Dicks, executed his will of August 22, 1911, because he was then incapacitated and unduly influenced, whereas he should have found as matter of fact that the reason why this latter will was executed was because he and his brother had changed

in feeling towards each other because of the mismanagement of the Augusta business by the brother and that the making of the second will was natural, as Mrs. Cassels and Miss Dicks, and the other two beneficiaries, his two domestics, because of their kind treatment and consideration to him, were the natural objects of his affection and kindness.

12th. That his Honor, Judge Sease, it is respectfully submited, erred in not passing upon and sustaining the objections of the defendants' attorneys to the items of testimony admitted in evidence as reported by the master, under objection of defendants' attorneys, for the reasons therein noted and set out, and that he especially erred in admitting and considering the testimony of J. J. Dicks, the plaintiff, as to his transactions and communications with the deceased, L. F. Dicks, or in admitting and considering any testimony as to the incapacity of, or undue influence upon, the deceased, L. F. Dicks, under the objections thereto.

*Messrs. Hendersons,* for appellants, cite: *As to proof required to establish contract:* 22 S. C. 468; 50 So. 884; 50 N. E. 265; 136 Am. St. Rep. 597; 73 S. C. 164; 28 S. C. Eq. (7 Rich. Eq.) 383; 41 S. C. 354; Waterson, Specific Performance, sec. 6; 73 S. C. 164. *As to consideration of contract:* 22 S. C. 467; 48 S. C. 86; 57 S. C. 577; *Ib.* 65; 70 S. C. 457. *Testimony of plaintiff as witness:* Code Civil Proc., sec. 438; 96 S. C. 86. *Cases distinguished:* 37 L. R. A. (N. S.) 1196, and 27 L. R. A. (N. S.) 508.

*Messrs. Claude E. Sawyer* and *Gunter & Gyles,* for respondents, cite: 5 Rich. Eq. —; 57 S. C. 56; 73 S. C. 155; 93 Am. Dec. 48; 48 S. C. 86; 1 DeS. 116; 41 S. C. 450; 27 L. R. A. (N. S.) 516; 1 Vernon 48; 10 Rich. Eq. 495; 4 Rich. Eq. 474; 49 Am. St. Rep. 479.

*Messrs. Bates & Simms,* also for respondents, cite: 2 Nott & McC. 482; 2 Brev. 279; 3 McC. 282; 2 N. & McC. 278;

57 S. C. 569; 73 S. C. 155; 1 DeS. 116; 27 L. R. A. (N. S.) 508.

*Messrs. Hendersons,* in reply: *Plaintiff bound by answer in probate Court:* 35 S. C. 378; 37 S. C. 235. *Issues there determined are res judicata:* 82 S. C. 15. *Evidence:* 14 Enc. of Ev. 504; 111 Pa. St. 460; 56 Am. St. Rep. 291; 135 Fed. 929.

April 2, 1915.

The opinion of the Court was delivered by MR. JUSTICE WATTS.

This was an action whereby plaintiff asks specific performance of an alleged contract for execution of mutual wills. The evidence shows that two brothers, James J. Dicks and L. F. Dicks, in September 11, 1890, executed wills in favor of each other. Before this they planted and rented their lands and also did a mercantile business in Augusta, Ga.; that L. F. Dicks had charge of the lands and farming operations, and that James J. Dicks had charge of the mercantile business. In 1905 they failed in their mercantile business, went into bankruptcy, and their mercantile effects were sold. On August 22, 1911, L. F. Dicks executed a later will giving legacies to two of his servants, Polly Scott and James Larry, and the remainder of his estate to two of his half-sisters, Sarah A. Cassels and Hattie M. Dicks, and naming Homer C. Cassels executor of the will. L. F. Dicks died December 3, 1911, and later this will was admitted to probate in Aiken county in common form. Later, upon application made to him, the Judge of probate for Aiken county issued notice to the executors of this will to appear and prove the will in due and solemn form. In this proceeding James J. Dicks, the only full brother of the deceased, and the half brothers and sisters of the deceased and the others concern in this will were brought in as parties

23—100

and this will was proven in due and solemn form and established and admitted to probate in due form of law.

Shortly after the filing of the decree of probate Court admitting will to probate in due form of law this action was instituted. James J. Dicks is the plaintiff in this action and under the will of L. F. Dicks, made September 11, 1890, he is the sole beneficiary and he claims that on that date, under an agreement then existing, he and his brother executed mutual, irrevocable wills for survivorship of property. The defendants are the executors and beneficiaries of the will of L. F. Dicks of August 22, 1911, and they (except Hattie M. Dicks, who made default) deny that such agreement for survivorship or for the execution of mutual wills ever existed.

Both L. F. Dicks and James J. Dicks were bachelors.

The cause was referred to the master for Aiken county to take testimony and report the same, which he did, and upon the testimony so reported the case came on for trial before his Honor, Judge Sease, who made a decree sustaining the claim of the plaintiff and directing that after the debts of L. F. Dicks are paid by the executor of his later will that all of the remaining property be delivered over to James J. Dicks as his property. From this decree all of the defendants under the later will of L. F. Dicks, who had answered, appeal. Exceptions 1, 2, 3, 9 and 10 raise the question which is the vital and pivotal one in the case, and that is whether or not there was a contract entered into between the dead brother, L. F. Dicks, and the living brother, J. J. Dicks, for the execution of mutual, irrevocable wills.

1    To establish an agreement such as is claimed by the plaintiff here the proof must be definite, certain, clear, and convincing. A person has a right ordinarily to leave his property to whom he pleases. He has a right any time to make a will disposing of his property and later on he can revoke this will in toto or change or modify the same by new will or codicil. It is a fixed principle of law

that a will is revocable whenever the maker desires to change. A person has the right to dispose of his property as he pleases. He can show gratitude, affection, or charity, or he can be capricious with his own. The law gives to every one the right to enjoy his property while alive and to make disposition of it after death. The maker of the will is dead and the degree of proof establishing a contract whereby a will is made that cannot be revoked by the maker ought to be clear and convincing. Certain and definite and scrutinized and received with the greatest of care. For it practically deprives the owner of property of any interest in the property except to enjoy it for life. It is a most serious thing for the Court to decide that a person cannot dispose of what is his by deed or devise, and because at one time he intended a certain person to be the beneficiary under his will and after his death to have his property later that he cannot change his mind and substitute another or others. As persons advance in life they change their views as to a number of things, and it frequently happens that a wealth of affection and favors have been wasted on persons and the recipient of the favors proves weak, unresponsive, unworthy, or ungrateful. A young person, it has been said, regards every one as his friend, but as he grows older he is wiser, more cynical, and his judgment more clarified, and he frequently finds that his judgment as to men and things has been inaccurate and erroneous. Some he has judged as being worthy he finds unworthy, or unsympathetic, or uncongenial, others that he has judged as unworthy he finds worthy and congenial. There is no doubt that at the time the wills were executed by the brothers in September, 1890, that L. F. Dicks intended J. J. Dicks to have his property. But it is a long time between 1890 and 1911, and during that time they had farmed together, merchandised together, and failed in the mercantile business together.

In *McKeegan* v. *O'Neil*, 22 S. C. 468, this Court says: "Such a contract, especially when it is attempted to be estab-

lished by parol, is regarded with suspicion and not sustained, except upon the strongest evidence that it was founded upon valuable consideration and deliberately entered into by the decedent."

In *Wilson* v. *Gordan*, 73 S. C. 160, 53 S. E. 79, this Court says: "Where a contract to make or not to revoke a will is set up, there are strong reasons for requiring an agreement definite and certain, established by evidence clear and convincing. The evidence comes from the living against the dead, who cannot speak in his own behalf in disproof of a charge of the violation of a solemn obligation. For this reason it is obvious little, if any consideration should be given to the testimony of those who claim the benefit of such a contract. On account of the secrecy observed by most persons as to the will they expect to make, there is little general discussion of the subject, and it is, therefore, difficult to disprove any intention or agreement attributed to the testator. Again, the discussion by two persons bound to each other by the closest ties of affection as to the disposition of their property resulting in separate wills by which the property of each was left to the other, affords no ground for the inference that either understood, or exacted a legal obligation. Such action may be far more reasonably attributed to the promptings of affection, and Courts should not introduce the mercenary element except on clear affirmative proof that it was present within the understanding of both parties. With this statement of the character and strength of the evidence which ought to be required in cases of this kind, we consider that which is here offered" * * *

On page 164 the Court says: "All the facts relied on as implying a contract to make wills are entirely consistent with the absence of contract, and the presence of the union of life and mutual affection as the impelling motive." * * *

And lower on same page: "The facts that there was an absolute devise from each sister to the other without limita-

tion, was strong evidence that there was no intention to limit the power of alienation. When an intention is reduced to writing, either in form of a will or contract, there is always a strong implication of fact that the whole intention has been expressed, and an implication still stronger that there is no agreement or intention contrary to that expressed." This principle is approved of in other States. *Allen* v. *Bromberg,* 50 Southern Rep. 884 (Ala. case); *Edson* v. *Parsons,* 50 N. E. Rep. 265 (N. Y. case). Our Court also says in *Church* v. *Farrow,* 7 Rich. Eq. (28 S. C. Eq.) 383: "It is, however, equally settled that the terms of the agreement should be unambiguous and definitely ascertained. If a Court be at liberty to conjecture the intention of the parties, it might fall into the error of decreeing what the parties never contemplated." "Specific performance of an agreement is not an absolute right in the party, but a question of sound discretion in the Court." *Holley* v. *Anness,* 41 S. C. 354, 19 S. E. 646; *Matheson* v. *McCutchen,* 84 S. C. 256, 66 S. E. 120.

In establishing the alleged agreement when Jas. J. Dicks was examined, objection was made, and his evidence as to transaction and communications he had with the deceased must be excluded under section 438 of the Code of Procedure. *McAulay* v. *McAulay,* 96 S. C. 86, 79 S. E. 785. There was no attempt to prove an earlier agreement or contract for mutual wills or survivorship prior to September 11, 1890, the time the wills were drafted and executed, and there is no proof at all of any written agreement. All the proof relied on to establish the agreement is parol and that is confined to the testimony of the plaintiff and T. R. Erwin, on the part of the plaintiff, and Messrs. D. S. and E. P. Henderson, attorneys, who advised and drafted the wills. D. S. Henderson, being the one who advised, and E. P. Henderson being the draftsman of the wills. A careful examination of all the evidence on this point convinces us that there was no agreement between

James J. Dicks and L. F. Dicks, that the wills were written and executed by them because of an agreement between them to make mutual, irrevocable wills. But on the contrary, both the plaintiff and his witness, Erwin, give as a reason that the wills were executed was because their step-mother was threatening to sue L. F. Dicks as administrator.

Taking the evidence as a whole we fail to find that the plaintiff has made out his case by the preponderance of the testimony. The evidence was the plaintiff shows that they were mistaken and inaccurate in their statement due to defective memory, lapse of time, or some other excusable cause. While the evidence on the part of the defense, especially that of D. S. and E. P. Henderson, is clear, definite, positive, and convincing, and establishes beyond question that there was no such agreement that the wills were to be mutual wills and intended to be irrevocable and that the purpose and object in making the wills were not intended as claimed by the plaintiff. D. S. Henderson is positive of this, and testifies most emphatically that this was not the object and purpose. E. P. Henderson is equally as positive. The evidence of the Hendersons, backed up as it is by their books in reference to the payments for the wills and all of the circumstances of the case, convince us that they were correct in their recollections as to the transactions. Mr. Erwin is in bad physical condition, the transaction was years ago, and by length of time, or impaired memory, we are satisfied he is mistaken. The overwhelming preponderance of the testimony on this crucial question is against the plaintiff, he has failed upon this vital point to establish his contention, but the defendants, by a clear preponderance of the testimony, have shown that there was no such contract or agreement, and his Honor was in error in so finding, and these exceptions must be sustained.

We do not think that it is necessary to consider all of the exceptions, other than to say that the eleventh exception should also be sustained, as there is no testimony to sustain

his Honor's finding that L. F. Dicks was incapacitated and unduly influenced. Mrs. Cassels and Miss Dicks were closely related to him, and it was natural that they should be kind to him, and also to their credit that they were, and there is no proof that justifies the finding by his Honor that he was incapacitated and unduly influenced.

The whole testimony shows us that the will of 1911 was the will of L. F. Dicks made upon due consideration and intent to dispose of his property as therein provided for.

Judgment reversed.

MESSRS. CHIEF JUSTICE GARY and JUSTICES HYDRICK and GAGE concur in the opinion of the Court.

MR. JUSTICE FRASER, *concurring.* I concur on the ground that no contract for mutual wills is shown. I do not think the question of undue influence can arise in this case.