## 9481

### KERR *ET AL.* v. KENNEDY *ET AL.*

#### (90 S. E. 177.)

1. SPECIFIC PERFORMANCE—CONTRACT TO MAKE WILL.—A contract to make a will in favor of specified beneficiaries, when fully established by certain, definite, clear, and convincing proof, and performed by the beneficiaries seeking relief, will be enforced in a Court of equity.

2. WILLS—CONTRACT TO DEVISE—EVIDENCE.—To set aside a will on the ground that a contract had been previously made, the contestant must establish his contention by clear, definite, and convincing proof.

3. WILLS—CONTRACT TO MAKE—SUFFICIENCY OF EVIDENCE.—In an action to enforce a contract to make a will, evidence *held* insufficient to show that testatrix made such a contract with plaintiffs, her nephews, instead of merely indicating to them her intention to will them her property.

4. WILLS—CONTRACT TO MAKE—IRREVOCABLE CHARACTER.—A contract to make a will, like other contracts, is irrevocable.

5. WILLS—CONTRACT TO MAKE—MEETING OF MINDS.—The minds of the parties must meet in making a contract to make a will, and the party engaging must understand she is not merely promising to do something in the future, but that she is relinquishing her right to change her mind.

6. WILLS—CONTRACT TO MAKE.—Where testatrix, making a will in favor of her nephews, stated that if they did not carry out their agreement to live near her and manage her property she would find some one who would, there was no contract to make a will in favor of the nephews; the declaration being fatal to such intention.

Before MOORE, J., Abbeville, April —, 1915.   Reversed.

Action by Frank and John Kerr against A. Seldon Kennedy, as executor of the last will and testament of Mrs. Josephine E. Sloan, deceased, and others. From a decree for plaintiffs, defendants appeal.

FOOTNOTE.—As to specific performance of contract to leave property in consideration of services or support, see notes in 44 L. R. A. (N. S.) 733 to 772; validity of contract note to change will, see note in A. & E. Ann. Cas. 1916d, 1160.

*Messrs. Grier, Park & Nicholson* and *Wm. P. Greene,* for appellants, cite: *As to degree of proof necessary to establish the alleged contract:* 3 S. C. L. 195; 48 S. C. 86; 57 S. C. 60; 57 S. C. 559; 73 S. C. 156 & 195; 22 S. C. 454, 457; 100 S. C. 348, 349; 111 Am. St. Rep. 496; 99 Am. Rep. 609; 111 Pa. 471; 68 C. C. A. 487; 34 Pa. 480; 2 Strob. Eq. 154. *Character of testimony:* 34 Pa. 480. *Frailties of memory:* 5 Ga. 341; 3 Wall. 279; 3 Rand (Va.) 167; 17 Cyc. 796; 111 Am. St. Rep. 496; 40 N. J. Eq. 99; 8 N. J. Eq. 779; 48 N. J. Eq. 566; Moore on Facts, secs. 873 to 894; 4 DeS. Eq. 432; 23 S. C. 461; 25 S. C. 537. *Part performance:* 57 S. C. 576. *Affection:* 73 S. C. 160. *Entire correspondence in evidence:* 57 S. C. 358; 58 S. C. 1 & 201. *Declarations of testator admissible:* 2 Rich L. 184 & 236; 49 S. C. 159; 6 Rich. L. 1; 13 Enc. Ev. 296; 31 Am. St. Rep. 691; 47 Conn. 450; 17 Ala. 55; 52 Am. Dec 164; 22 Ala. 529; 58 Am. Dec. 268; 62 Iowa 163; 40 Pa. St. 483; 1 Bradf. 378; 50 Md. 466; 55 Iowa 433; 3 Wigmore Ev., sec. 1738.

*Mr. Wm. N. Graydon,* for respondent, cites: *As to admissibility of parol evidence to establish lost instrument:* 11 Rich. Eq. 537; 1 Greenleaf Ev., sec. 558; 17 S. C. 587; 19 S. C. 601; 43 S. C. 370. *Abandonment question of intention:* 3 Strob. L. 224; 22 S. C. 166 & 547. *Concurrent findings below:* 12 S. C. 270; 55 S. C. 203; 98 S. C. 8; 94 S. C. 473; 92 S. C. 511. *Testimony of party as to conversation between decedent and third party admissible:* Code Civ. Proc. 438; 9 S. C. 279; 11 S. C. 36; 16 S. C. 631; 16 S. C. 402; 20 S. C. 367; 26 S. C. 251; 32 S. C. 511; 56 S. C. 385; 55 S. C. 510; 44 S. C. 25. *Self serving declarations:* 30 S. C. 144; 1 Greenleaf Ev., sec. 147; 7 Rich. L. 97; Bailey Eq. 492.

*Messrs. Cothran, Dean & Cothran,* for respondents, cite: *As to self serving declaration by deceased:* 84 N. E. 619;

91 N. E. 420.   *Sufficiency of proof:* 75 N. E. 582; 122 N. W. 852; 138 N. W. 721; 33 Pac. 218; 121 Pac. 485; 97 S W. 901; 92 Pac. 78; 151 S. W. 155; 94 N. E. 942; 91 N E. 420; 93 N. E. 86; 129 S. W. 261; 98 N. W. 57; 136 N. W. 1025; 81 Atl. 474.

July 27, 1916.

The opinion of the Court was delivered by MR. JUSTICE WATTS.

This is an action by the plaintiffs against the executor of the will of Mrs. Josephine E. Sloan and certain beneficiaries under her will, to enforce an alleged contract to dispose of her property by will in a certain way.   The plaintiffs allege that Josephine E. Sloan entered into a contract in the spring of 1894, whereby plaintiffs agreed to live near by or with her, take care of her during her lifetime, manage her property for her, and give her all the care and attention which she might require, or which might be expected of sons to a mother, and in consideration of which Mrs. Sloan agreed to make her will in favor of the plaintiffs, and thereby to devise and bequeath to them her entire real and personal estate, with the exception of a pecuniary legacy of $2,000.00 in favor of the United Presbyterian Church, and with the further qualification that the plaintiff, John Kerr, should receive $500.00 more than the plaintiff, Frank Kerr, in the division of her estate.   The complaint alleges this agreement, and that in pursuance thereof, in the spring of 1894, Mrs. Sloan did execute her will, according to the formalities of law, containing the devises and bequests as stipulated in the agreement; that the plaintiffs, relying on the agreement and execution of the will, entered upon the discharge of their obligations under the agreement, and from that time until her death in May, 1914, faithfully performed and carried out their part of the same, and gave her close and unremitting personal attention for more than 20 years,

renouncing their own plans and prospects of life and devoting their lives to her service; that about ten years after the first will was executed Mrs. Sloan, without their knowledge, executed another will, to which four codicils were added, by which she devised and bequeathed her estate differently. They allege that from 1894, when the agreement and will was made, until 1904, when her new will was made, the plaintiffs were faithfully performing their agreement, and knew nothing of the proposed change in the will, and Mrs. Sloan maintained an absolute silence as to such change, and they were thus induced to continue their service as long as she lived until her death some ten years later; that upon the faith of the agreement the testatrix for more than 20 years, obtained all that she covenanted for, the unremitting care and services of the plaintiffs, while in the secret possession of knowledge that she herself had violated the agreement by making a new and different disposition of her property; and that such conduct was a fraud upon their rights. The answers to the complaint interpose the defenses of general denial of the material allegations of the complaint, the statute of frauds, the statute of limitations and estoppel by conduct. The cause was tried at the March term of Court, 1915, for Abbeville county, before his Honor, Judge Moore, upon testimony submitted in open Court, who on April 21, 1915, filed his decree, sustaining plaintiffs' contention and decreeing them fully the relief prayed for. After entry of judgment defendants appeal, and by 36 exceptions impute error on the part of his Honor.

It is unnecessary to take up the exceptions one by one, as the appellants in arguing the case allege the four specifications covering all of the assignments of error embraced in all of the specifications are as follows: (1) In holding that the testimony was sufficient to establish the alleged contract by that character and quantum of proof which will justify a Court of equity in denying to testatrix the right to make a will; (2) error in considering the testimony of Judge

Lyon as a question of credibility and high character of the witness, whereas it ought to have been considered and treated as a matter of memory; (3) error in holding that there was sufficient testimony to show such performance of the alleged contract as would justify a Court of equity in decreeing its performance; (4) in not holding that the contract, if any ever existed, was abandoned.

As to the first, has the alleged contract been established by the character and sufficiency of proof which would justify the Court in denying the testatrix the right to make a will and dispose of her own property in her own way, or whether the alleged contract was proven and was there such past performance as would justify its enforcement? There is no doubt that a contract of the character alleged in the pleadings in this case, when it is fully established by clear and convincing proof and has been performed by the party seeking relief, will be enforced by a Court of equity. This has been decided in a number of cases in our own State, some of which later cases are *Bruce* v. *Moon,* 57 S. C. 60, 35 S. E. 415; *Turnipseed* v. *Sirrine,* 57 S. C. 559, 35 S. E. 757, 76 Am. St. Rep. 580; *Wilson* v. *Gordon,* 73 S. C. 156, 53 S. E. 79; *Dicks* v. *Cassels,* 100 S. C. 348; 84 S. E. 878. It must be borne in mind that ordinarily a person has the right to dispose of his property as he sees fit, can deed it away while alive or dispose of it by will after death, and to deprive a person of this right is to deprive him of a weapon of offense and defense, more particularly the aged. To say to the old, "You have put it out of your power to dispose of your property by will, as you have already contracted for its disposition after your death," in most cases would be productive of unhappiness, heartburning bitterness, and neglect, as long as one has property enough to pay for service and pay for being looked after, then some one will look out for them. It is said that "the bitterest of all bread is the bread of dependence," and before

this great right shall be taken from any one, the agreement relied on to deprive him of that right must be established by evidence that must be certain, definite, clear, and convincing, as was said by this Court in *Dicks* v. *Cassels,* 100 S. C. 348, 84 S. E. 879, in order that contracts of this character may be enforced by this Court, the following must be established :

"To establish an agreement such as is claimed by the plaintiff here the proof must be definite, certain, clear and convincing. A person has a right ordinarily to leave his property to whom he pleases. He has a right any time to make a will disposing of his property, and later on he can revoke this will in *toto,* or change or modify the same by new will or codicil. It is a fixed principle of law that a will is revocable whenever the maker desires to change. ·A person has a right to dispose of his property as he pleases. He can show gratitude, affection, or charity, or he can be capricious with his own. The law gives to every one the right to enjoy his property while alive, and to make disposition of it after death. The maker of the will is dead, and the degree of proof, establishing a contract whereby a will is made that cannot be revoked by the maker, ought to be clear and convincing, certain and definite, and scrutinized and received with the greatest of care. For it practically deprives the owner * * * of any interest in the property except to enjoy it for life. It is a most serious thing for the Court to decide that a person cannot dispose of what is his by deed or devise, and, because at one time he intended a certain person to be the beneficiary under his will and after his death to have his property, later, that he cannot change his mind and substitute another or others."

In the second specification of error the defendants complain as to the great credence given by his Honor to the evidence of Judge Lyon. A study of the evidence in the case shows that the testatrix, a woman of unusual intelligence and character, brought into her household her orphan infant

nephews, both of their parents having died within a week of each other, and reared and educated them, her husband at that time being alive. These children were treated in the kindest and most considerate manner by Dr. Sloan and their aunt, the testatrix. They were both educated, not only in good schools, but were given a college education. Dr. Sloan remembered them generously in his will. About a month after Dr. Sloan's death Mrs. Sloan made the will, which it is alleged was the contract between her and the plaintiffs. No one can deny but that Mrs. Sloan at that time intended to dispose of her property at her death as provided for in that will, but the question is : Did she intend that will to be an irrevocable contract, or did she intend it to be simply a declaration of intention? Judge Moore based his decree largely upon the evidence of Judge Lyon. We have not the slightest doubt but that Mrs. Sloan did declare to him that it was her intention that her nephews should have her property as provided for in the will, but we do not think that this declaration was sufficient for his Honor to hold that it was an irrevocable contract. His Honor adopted the evidence of Judge Lyon, and practically based his whole finding on that evidence. He ignored entirely the environments and circumstances of the whole case.

Was there a meeting of the minds between Mrs. Sloan and the plaintiffs that the will made in 1894 was a binding mutual contract enforceable in law between them? Was the will the binding contract between them fixed and irrevocable, and did they so regard it, or was it simply a declaration of Mrs. Sloan that at that time she intended them to have her property after her death, but reserving the usual rights that all people have of changing her mind and revoking her will and dying intestate or disposing of her property differently by making another will? The subsequent acts of the parties themselves show that they considered it not a binding irrevocable contract, but simply a declaration of

intention. Mrs. Sloan by making another will and codicils showed that her idea was that her former will was simply a declaration of intention, and not that she had made an irrevocable contract. The plaintiffs evidently did not regard the first will as a binding irrevocable contract. John advised his wife to put in a claim against the estate, which shows that he did not render the services in pursuance of the contract which he attempted to enforce, and Frank, in the presence of John, witnessed with another one of the codicils of Mrs. Sloan without protest on their part, which shows conclusively that they did not regard the first will of Mrs. Sloan as a contract that she could not revoke. We again quote from *Dicks* v. *Cassels,* 100 S. C. 349, 84 S. E. 879:

"As persons advance in life they change their views as to a number of things, and it frequently happens that a wealth of affection and favors have been wasted on persons, and the recipient of the favors proves weak, unresponsive, unworthy, or ungrateful. A young person, it has been said, regards every one as his friend, but as he grows older he is wiser, more cynical, and his judgment more clarified, and he frequently finds that his judgment as to men and things has been inaccurate and erroneous. Some he has judged as being worthy he finds unworthy, or unsympathetic, or uncongenial; others that he has judged as unworthy he finds worthy and congenial. There is no doubt that at the time the wills were executed by the brothers in September, 1890, L. F. Dicks intended J. J. Dicks to have his property. But it is a long time between 1890 and 1911, and during that time they had farmed together, merchandised together, and failed in the mercantile business together."

The evidence shows that Mrs. Sloan was a good business woman, careful and economical in her expenditures as far as she was individually concerned, just and generous as far as her nephews were concerned, and by good management on her part accumulated a good estate. By reading all the

testimony we cannot but conclude that the adding to her estate was the result of good judgment and good management on her part and following the advice of level-headed business men, whom she from time to time consulted, and not the management of her nephews, for the evidence shows that they, like a good number of others, were unfortunate in their enterprises and undertakings, and, instead of aiding her to accumulate, called upon her for assistance, which she generously furnished them. By the terms of the last will the plaintiffs and their children get as much almost as the first will gave them. Mrs. Sloan was greatly blessed, as she says, in the accumulation of property, fortunate in her investments, the wife of a minister of the gospel, a devout Christian, and had a perfect right to do as she pleased with her own. She did a good part by the plaintiffs, she took them as small infants, and reared and cared for them as if they were her own children, and she had a right to assume that they would be good to her in her old age, and they were, but the testimony fails to show that she ever entered into a binding contract that she would give them the whole of her estate after her death. It was her intention to do so at one time, but this was never more than an intention; she had a perfect right to change her mind. She did so for reasons satisfactory to herself. She did not, in any manner, practice a fraud on the plaintiffs. There is no clear, cogent and convincing evidence in the case that carries irresistible conviction to the mind that such a contract was made as claimed by the plaintiffs as the Court would enforce.

It is an ancient and boasted right that a person has a right to dispose of, by deed or will, what is lawfully his own, and a person who undertakes to set aside a will, in every way properly executed by a competent person, on the ground that a contract had been previously made, must establish his own contention by clear, definite, and convincing evidence. They, plaintiffs, have failed to do this in this case.

A contract to make a will, like other contracts, is irrevocable. The minds of the parties must meet. The testatrix must understand she is not merely promising to do something in the future, but doing it now; that she is relinquishing her right to change her mind. Judge Lyon says:

"The whole contract, as I stated, was talked over when she read the will, and Messrs. Frank and John Kerr agreed to it—the contents of the will—they said they were willing to carry it out, and I remember distinctly she said to me, 'If they don't, I will find somebody who will.' "

To my mind that statement is fatal to a contract to make a will. It seems to me to be unquestionable that Mrs. Sloan declared that day by that statement that she intended to retain her testamentary power, and therefore, retained it. That statement, made in the presence of her nephews, destroys absolutely the idea that a contract was made. The testatrix was an aged childless widow, and no doubt disposed of her property according to the prompting of her mind and heart, as she in her judgment thought best, and we do not see, under the evidence in the case, why her solemn will and testament, wherein she disposed of what was her own, should be set aside and the property diverted to others, contrary to her intention.

Exceptions sustained, and judgment reversed.