9648

BROWN v. GOLIGHTLY.

(91 S. E. 869.)

1. WITNESSES — COMPETENCY — TRANSACTIONS WITH PERSONS SINCE DECEASED.—Where plaintiff sued to recover an undivided one-half of deceased's property, alleging oral contract on his part to will her such property, her testimony was incompetent to prove the contract under Code Civ. Proc. 1912, sec. 438, rendering a party incompetent to testify as to a transaction with a person since deceased in an action against the heir of such person.

2. FRAUDS, STATUTE OF—CONTRACTS ENFORCEABLE.—An alleged oral contract by a person since deceased to will property to the plaintiff is void as within the statute of frauds.

3. SPECIFIC PERFORMANCE—CONTRACTS ENFORCEABLE.—To enforce a contract whereby a person contracts to dispose of real estate by will, the same principle is applied and the same proof is necessary as when he contracts to convey title by deed.

Before SMITH, J., Spartanburg, August, 1916. Reversed.

Suit by Geneva Brown against Julia Golightly. From a decree for plaintiff, defendant appeals.

The decree in the trial Court was as follows:

This action was commenced on the 22d day of May, 1911, to have the plaintiff adjudged the owner in fee of the land described in the complaint, for the specific enforcement of

FOOTNOTE.—As to the validity of oral agreement to devise land, see notes in 5 A. &. E. Ann. Cas. 495, 20 A. &. E. Ann Cas. 1137, 35 A. & E. Ann. Cas. 1915a, 463, 102 Am. St. Rep. 240. As to what may amount to part performance taking the case out of the statute of frauds, see *Horton* v. *Stegmyer,* 175 Fed. 756, 20 A. & E. Ann. Cas. 1134; also 14 L R. A. 863.

the contract which is alleged to be the source of the plaintiff's interest, and for the sale thereof in partition.

It is alleged in the complaint, in substance, that the parents of the plaintiff, who was then a minor, entered into a contract for and in her behalf with one William Golightly, the owner of the land described in the complaint, in which it was agreed that, if the parents of the plaintiff would permit her to live with the said William Golightly and his wife until the death of the latter, or until the plaintiff had arrived at the age of 21 years, so that she might work for them, and, if necessary, assist in caring for them, then, in consideration thereof, the said William Golightly would at his death leave the plaintiff a one-half interest in the said land, and that, in accordance with the terms of the said contract, the custody of the plaintiff was surrendered to the said Golightly, and the plaintiff and her parents have fully and faithfully performed all the conditions imposed upon them by said contract, and that she remained with the said William Golightly until after the death of his wife; that on the 6th day of April, 1911, William Golightly died, and, in violation of his said contract, failed to leave the plaintiff a one-half interest in said land; that the defendant, Julia Golightly, is the widow of the said William Golightly; the defendant, Miles Golightly, is his brother; the defendant, Missouri Golightly Burke, is his sister, and the defendants, William Golightly and Missouri Golightly Alley, are his nephew and niece, respectively; that these parties are in possession thereof and withhold the same from the plaintiff; wherefore, the plaintiff asks that she be adjudged the owner of a one-half interest in said land; that the contract in question be specifically enforced; that the said land be ordered sold in partition; and that the defendants account for the plaintiff's share of the rents and profits.

The defendants, with the exception of the defendant, Julia Golightly, answered the complaint and set up a general

denial, with the admission of some of the allegations of the complaint, and relied upon the statute of frauds.

The case was referred to the master, with the power to determine all issues of law and fact. In his report the master determines every issue substantially in favor of the plaintiff. His conclusion of law, amply supported by the authorities, and forcibly presented with a clear and concise statement, are that it was unnecessary for the contract in question to contain a specific description of the land in question, as it related to "all" of the lands owned by the said William Golightly; that a reasonable compensation for the services rendered was not an exclusive remedy for the plaintiff; that the Courts will sustain and enforce contracts made for a minor's benefit, especially where the performance has resulted; and that the statute of frauds is not applicable, the plaintiff having performed her part of the contract.

The master likewise makes a very strong statement of his conclusion with regard to the facts of the case. He reports: "That the contract was made as alleged in the complaint. This is clearly established by the testimony of the plaintiff, William Jeter, Evelyn Brown and Harvey Cureton. There is no testimony to the contrary." Again: "That the plaintiff faithfully performed and carried out her part of the contract. She left her own home and went to William Golightly and his wife, Riney (first wife), and remained with them until the latter's death, whereupon she was returned by William to her father's home, a period of nine years. She gave them her entire attention, helped to do any and everything that was to be done about the house or in the field, attended Riney when sick, and through the year of her last illness was the only one there to help or care for these old people, devoted her life to them, and was thereby deprived of all opportunity of going to school, except about two months. William admitted after Riney's death that the contract had been faithfully performed by the plaintiff, and that, in accordance with the contract, she would get one-

half of his property at his death. The testimony is all one way in support of the finding; there is none in conflict with it." Again: "The services contracted for and rendered by the plaintiff were of such a peculiar and personal character that it would be impossible to establish by pecuniary standard, and it was not the intention of the parties that they should be so measured. They consisted of housework, fieldwork, personal care, attention, and nursing, self-sacrifice, constant companionship and delicate service, by a niece, which money could not buy—things that cannot be estimated in dollars and cents."

The master, therefore, recommended that the relief demanded by the plaintiff be granted, which report was confirmed by the Circuit Court and a decree embodying these views and conclusion was duly filed.

Thereafter, upon the petition and affidavits presented to the Court by the defendant, Julia Golightly, the cause was reopened, this defendant, who was in default in the original proceeding, was allowed to answer, and the cause was recommitted to the master, with power to hear and determine all issues. The defendant answered the complaint, setting up a general denial, and, by way of defense to the action, alleged that the said William Golightly died leaving a will under which she is the sole heir and devisee, and that the premises described in the complaint were peaceably held by her under the will, and that neither the plaintiff nor her codefendants have any interest in said premises, and asked that she be adjudged the sole owner thereof.

In his second report the master adheres to his conclusions on the law of the case, but with regard to the facts he reports: "I have entirely changed my views since the introduction of the testimony produced by the witnesses for the defendant, Julia Golightly, at the second reference. While some of the testimony must be ruled out as incompetent, there is enough of evidence from the mouth of respectable white people that the plaintiff was entirely incapable of per-

forming such services as were contemplated by the contract between her parents and William and Riney Golightly." He, therefore, recommends that the defendant, Julia Golightly, be adjudged the sole owner of said lands under the will of her husband, and that the decree of the Court heretofore announced be thus modified.

In its consideration of the cause the Court will, of course, be confined to such questions as are presented by the exceptions to the master's report. The first report being adverse to the contention of the defendants, numerous exceptions were filed by them, except the defendant, Julia Golightly, who was in default, to the conclusion of the master on the law and the facts of the case. This report was confirmed by the Circuit Court. Those defendants have no further interest in the case, as they are excluded from all interest in the land in question under the will of William Golightly, under which Julia Golightly now claims; and they have filed no exception to the second report so holding. In the second report the master expressly states that he adheres to his former conclusion on the law of the case; and to this conclusion neither party files an exception. Being empowered to report his findings of the fact and conclusion of law, he had necessarily to pass upon all questions relating to the competency of testimony involved. The law of the case, in all its phases, must, therefore, be regarded as settled, so far as this inquiry is concerned.

The sole question presented for the determination of the Court is whether the master was in error when he concluded that the "plaintiff was entirely incapable of performing such services as were contemplated by the contract between her parents and William and Riney Golightly."

There is not a word of testimony offered by the defendant, Julia Golightly, at the second reference which in any manner assails the existence of the contract in question, or in any way impeaches any of its terms and conditions. This being true, the conclusion follows that the testimony which war-

ranted the master in finding in his first report that the contract was "clearly established" is still, as a matter of fact, capable of supporting a similar conclusion.

There is absolutely no testimony produced at the second reference which even tends to show that the plaintiff did not enter into the service of William Golightly and his wife, Riney, at the time indicated and required by the contract, or that she did not remain there till the death of William Golightly's first wife, Riney, which event, under the express terms of the contract, terminated her duty to remain. On the contrary, the witness, H. J. Israel, testified: "I don't think she left the place before the first wife died," and the witness, Lewis Gray, said, "She was there till the death of Riney." These witnesses, as well as George Adair, Mrs. Mary Israel, H. J. Greer, W. H. Dempsey, Dexter Shippey and Dr. R. A. Turner, testify that the plaintiff was in the home of William Golightly, and utter not one word inconsistent with her stay during the entire time contemplated by the contract as testified to by the plaintiff's witnesses. It is also equally obvious that there is not a word of testimony offered at the second reference that the parties "contemplated" a contract different from that established by the testimony at the first reference. The evidentiary force of testimony at the second reference, in its last analysis, is to show that the plaintiff did not perform because she did not have the "capacity," but there is not the slightest word adduced to show that the parties did know with regard to such services as she had the capacity to perform, or that the contract contemplated service beyond her capacity. The new testimony that was competent seems to have been directed to a *quantum meruit,* a principle having no application to this contract, which, as the master found in his first report, did not call for measure by active services. The contract was "that she would be turned over to William and Riney, to live with them, and, if necessary, to help take care of them, till she, Riney, died." It is unquestionable that

she was turned over to them, that she did remain with them till Riney died, and there is no testimony in opposition to the finding of the first report that she gave them her entire attention, devoted her life to them, cared for Riney when sick and in her last illness, and helped around the house and field, and William afterwards, after Riney's death, admitted that the contract had been fully performed by plaintiff. Excluding irrelevant and incompetent testimony—and in this connection all objection offered by the plaintiff's attorney to testimony at the second reference on the ground that such declarations were self-serving must be sustained—the testimony of the defendant's witnesses at the reference can be condensed to almost a sentence, each without the slightest injustice thereto. The witness, Adair, says: "I saw the girl around there; she was a little child when she first came there, Geneva Brown." Mrs. Israel testifies: "She was very small when she went there. In my judgment, she wasn't capable of taking care of the old people. She wasn't grown when she left." H. J. Israel says: "She was a very small child when she went there to live with William. She couldn't look after anybody." H. J. Greer says: "I suppose she was seven years old; wouldn't think she was capable of taking care of old folks." Lewis Gray testifies: "Suppose she was five years old when she went to William. She couldn't take care of nobody when she went there; they had to take care of her." W. H. Dempsey says: "The child was very small when I saw her; she wasn't big enough to take care of anybody." Dr. R. A. Turner says: "I remember seeing one little girl around there. I suppose it was a seven-year-old child." Dexter Shippey testifies: "I think Geneva would have been a care to them, rather than a help." These extracts probably present the testimony in its strongest phases against the plaintiff, but it will be noticed that the observation of incapacity relates almost entirely to the time when plaintiff "first went" to the service of William Golightly and his infirm wife, when "she was very small,"

"seven years old." It will be noted from all the testimony in the case that plaintiff was some seven or eight years old when contract was made, and that she remained under it for nine years. She was, therefore, capable of much activity and energy during that period, and it would not be rational to measure her capacity throughout it by her capacity at the beginning of it. There is no testimony that William and Riney Golightly were misled as to the child's capacity, or that there was anything abnormal about her, or that she developed an incapacity; nothing of a substantial nature to support the second conclusion of the master, modifying his first finding, which was the correct one, in the judgment of the Court, "that plaintiff faithfully performed and carried out her part of the contract." It matters not what her age or capacity may have been at the time the contract was made; the testimony being that William and Riney Golightly asked that the contract relate to the plaintiff. No one better than themselves knew their own condition and needs. They were familiar with the age, experience, and capacity of the plaintiff at the time, and certainly the parents, with whom the contract was made for her, also knew all the surrounding conditions. All the parties, therefore, must be presumed, with this knowledge, to have contracted with regard to that service which the plaintiff was reasonably capacitated to perform at the time of the contract, and to her probable increase in efficiency and value as her age and experience progressed. If this be true, then the testimony adduced at the second reference should not have the legal effect of altering or destroying the valid contract between the parties.

Applying to the testimony in this case the degree of proof declared to be essential in the establishment of the contract to make mutual wills in the case of *Dicks* v. *Cassels,* 100 S. C. 341, 84 S. E. 878, and the rule announced in *Wilson* v. *Gordon,* 73 S. C. 160, 53 S. E. 79, that the agreement must be defined and certain, established by evidence clear and

convincing, the conclusion reached by the master in his first report is fully warranted, and there is nothing in the subsequent reference to support an interference with it, so far as the rights of the plaintiff are concerned. The contract stands clearly established as alleged in the complaint. Defendant's argument as to *nudum pactum* has been fully considered, the testimony relied upon in support of it has been referred to, and the conclusion stated. The law upon the subject seems to be clear.

In the case of *Gee* v. *Hicks,* 9 S. C. Eq. (Rich. Eq. Cas.), 15, where a boy sixteen years old was brought up from Mississippi to South Carolina by his mother, who was induced to do so by the promise to pay the boy $3,000 when of age, the Court held that the promise was based upon sufficient consideration, was *nudum pactum,* or within the statute of frauds, Judge O'Neall, for the Court, saying: "It is perfectly clear that, to constitute a consideration sufficient to support an executory contract, it need not be an exact *quid pro quo.* Anything which is to benefit the party making the promise, and which he could not otherwise obtain, or which puts the party to whom the promise is made, to any trouble, inconvenience or loss, will prevent the contract from being *nudum pactum.* * * * If he (the minor) performs his part of the contract, he has a perfect legal right to demand the performance of the other part from the other party."

6 Ruling Case Law, 678, thus states the rule: "Where a party contracts for a performance of an act which will afford him a pleasure, gratify his ambition, please his fancy, his estimate of the value should be left undisturbed, unless there is indeed evidence of fraud. There is in such case absolutely no rule by which the Court can be guided if once they depart from the value fixed by the promiser."

This action is amply sustained by the principles announced in case of *Fogle* v. *St. Michael Church,* 48 S. C. 86, 26 S. E. 99. In this case the plaintiff was induced to leave her home

and abide with a woman who was the devisor of the defendant, in order that the latter might have her companionship and society. In consideration and by the way of inducement to the consent of the plaintiff to this arrangement, she was promised a devise and legacy of one-half of all this woman's estate, real and personal. Upon the death of the devisor, she left her whole estate to the defendant. The suit was brought to enforce the contract. In discussing the question, the Court, at pages 90 and 91 of 48 S. C., at page 101 of 26 S. E., says: "* * * The case of *McKeegan* v. *O'Neill,* 22 S. C. 454, shows that such an action as is alleged in the complaint is equitable in its nature, and that the Court, in the exercise of its equitable powers, will enforce specific performance thereof. The case of *Gary* v. *James,* 4 DeSaus. 185, decides that, when the Court adjudges specific performance of the contract like the one alleged in the complaint, the effect of such judgment is to take precedence of the devises and legacies mentioned in the will. This principle is sustained by Beach on Contracts, sec. 917, in which the author says: 'An agreement to make a disposition of property by will may be enforced by requiring those to whom the property descended or was devised to convey in accordance with the terms of the agreement.'"

In the case of *Holley* v. *Anness,* 41 S. C. 354, 19 S. E. 646, and *Marthinson* v. *McCutchen,* 84 S. C. 256, 66 S. E. 120, it is held that the specific performance of an agreement is not an absolute right, but rests in the sound discretion of the Court. The conclusion reached by me in this cause is so strongly supported by the competent testimony adduced that I feel that judicial action on this basis should be favorable to the contention of the plaintiff. It is highly probable that the weakness and infirmity of William Golightly's ripe old age during the closing years of his life yielded to the care and devotion of his second wife, Julia, which was the subject of commendation, and notice of some of the witnesses, estranged him from the performance of his duty and original

purpose,.and that the breach of his legal duty to the plaintiff was obscured by his recognition of what he conceived a higher one than Julia.

Wherefore, it is ordered, adjudged and decreed that, under the contract between William Golightly and the parents of the plaintiff in her behalf, the said William Golightly was bound to leave to the plaintiff a one-half undivided interest in fee in the lot of land described in the complaint, and that the plaintiff is the owner in fee of a one-half undivided interest therein, and that the defendant, Julia Golightly, is the owner of the other half interest therein.

It is further ordered, adjudged and decreed that the defendant, Julia Golightly, do, within ten days after written notice of the filing of this decree, execute in proper form, to be approved by the clerk of this Court, and deliver to him for the plaintiff a deed conveying in a fee. simple an undivided one-half interest in the said lot of land, and that the same be recorded in the office of the Register of Mesne Conveyance of said county.

It is further ordered, adjudged and decreed that the said lot of land be divided into lots by a surveyor, to be appointed by the master, of such size, relative location and dimensions as shall appear to the master most advantageous to the interest of all parties, due notice being given to them of such division as shall be adopted by the master, and that said land, thus divided, be sold as required by law by the master of Spartanburg-county on the regular sales day in November, 1916, or some subsequent sales day, the terms of said sale to be one-half cash, balance on credit of one year, with interest at 7 per cent. per annum from day of sale, secured by bond of purchaser and mortgage of the premises purchased, with leave to pay all cash, purchaser to pay for papers and recording, and to be let into possession upon presentation of master's deed; should the purchaser fail to comply with bid, then the premises so purchased to be sold on the next subsequent sales day at the risk of the defaulting purchaser;

that the proceeds of the sale, after the payments of the costs and disbursements of the action, be paid to the plaintiff and to Julia Golightly, or to their attorneys, in equal share; that the taxes on the land for the year to be paid by Julia Golightly, she being in the enjoyment of the property.

Should the said two parties , or their attorneys, agree in writing to a partition in kind of the property instead of a sale thereof, prior to the day of sale, the master will carry the agreement into effect by executing to each of them a conveyance in fee of the portion so agreed upon for each of them, respectively, in which event there will, of course, be no sale, and the cost and expense of the action will be borne equally by them, the amount for which each is liable to stand as a lien upon his or her portion of the land till paid, such lien to be enforced by application to the Court in this cause.

The land involved in this action is described in the complaint as follows: "All of that lot of land in said county and State lying one mile west of the city of Spartanburg, beginning at a rock in street John Williams' corner, or on his line, running thence to said street S. 9½° E. 7.14 to a rock, S. Bobo's corner; thence S. 19½° W. to rock, Golightly's corner; thence N. 89° W. 6.71; thence along Williams' line N. ¼° E. 8.35 to the beginning corner—containing 5.40 acres, more or less, as per survey made and plat executed by Sams, surveyor, on or about October, 1879, and then bounded by lands of Farley, Bobo, Williams and others, a record of which is in Book PP, page 405, office R. M. C. of said county." As hereinbefore directed, the land will be resurveyed and platted by the surveyor to be appointed by the master.

It has been agreed by the counsel that the copies of lost or mislaid records in the cause accompanying this decree, stand substituted for such originals, and it is so ordered. Ordered and adjudged further that the report of the master, except so far as the same is in conflict with the conclusions herein announced, be confirmed.

*Mr. John Gary Evans,* for appellant, cites: *As to sufficiency of parol evidence to establish contract to devise real estate:* 57 S. C. 569; 3 DeS. Eq. 185, 190, 366, 514; 22 S. C. 455; Waterman Specific Performance 468; 48 S. C. 86; 57 S. C. 60; 80 Ala. 451; 60 Am. Rep. 107; 66 Am. Dec. 773; 73 S. C. 158; 100 S. C. 348; 96 S. C. 86; Riley Eq. 230. *Plaintiff's testimony incompetent:* Sec. 438. *Application of statute of frauds:* 20 Cyc. 235; 53 N. E. 722; 77 Ind. 96; 28 N. E. 731; 68 S. C. 185; 93 Md. 213; 68 N. J. Eq. 300; 63 N. Y. Suppl. 393; 61 N. E. 148; 57 S. C. 559; 92 S. W. 767; 97 N. W. 524. *Findings of fact in equity proceedings are reviewable:* 46 S. C. 184. *Hearsay:* 46 Fed. 718.

*Mr. Stanyarne Wilson,* for respondent, submits: *Only self-serving declarations excluded:* 80 S. C. 222. *Statute of frauds inapplicable:* 48 S. C. 86; 57 S. C. 576.

March 19, 1917.

The opinion of the Court was delivered by MR. JUSTICE WATTS.

This is an appeal from a decree of his Honor, Judge Smith, made at the Summer term of the Court, 1916, for Spartanburg county. The decree fully sets out the facts of the case and the points and issue and will be reported. To this decree the defendant excepts, and by 16 exceptions alleges error and asks that the same be reversed.

We think the decree should be reversed, as there was not such an agreement or contract proven as would require the deceased to make a will giving the plaintiff a part of his real estate after his death or such an agreement or contract made between the parties as would justify the Court in decreeing specific performance. The attempt is to enforce an agreement or contract as to real property; and there is not a particle of written evidence in any form to

support the contention of the plaintiff, and no claim on her part that there is any such evidence. Her contention is supported by parol testimony alone.

In the case here the testimony of the plaintiff is clearly incompetent to establish any contract with the deceased under section 438 (Code Civ. Proc.), and such a contract is not binding under the statute of frauds unless in writing and signed by the party to be charged therewith. No such contract can be established by parol evidence alone; there must be some writing in the case to take it out of the statute of frauds.

Excluding the evidence of plaintiff under section 438 of the Code and the absence of any written evidence to in any way establish the agreement or contract as contended for by the plaintiff, there is an entire failure to establish the contract, and plaintiff's case fails fully. The alleged contract is void under the statute of frauds, and there is not a single decision of this Court in this class of cases that contemplated abrogating the statute of frauds.

In order to enforce a contract whereby a party contracts to dispose of real estate by will, the same principles apply and the same proof is necessary as when he contracts to convey title by deed. Under all of the evidence in the case and a careful examination of the same and all the circumstances in the case there is no evidence to sustain the finding of the Circuit Court; under the decisions of this Court in *McAulay* v. *McAulay,* 96 S. C. 86, 79 S. E. 785; *Dicks* v. *Cassels,* 100 S. C. 348, 84 S. E. 878, and *Kerr* v. *Kennedy,* S. C., 90 S. E. 177, it is laid down that, in order to enforce specific performance in cases of this character in a Court of equity, the contract must be reasonable, clear, definite and certain and established by strong, clear and convincing evidence and for a valuable consideration; in this case the plaintiff has utterly failed to establish this requirement.

Judgment reversed, and complaint dismissed.

MESSRS. JUSTICES FRASER and GAGE concur in the opinion of MR. JUSTICE WATTS.

MR. JUSTICE HYDRICK, *concurring.* I concur in the result on the ground that the evidence fails to establish the agreement alleged in the complaint by that measure of proof required by law in such cases. It is not sufficiently clear, definite and certain. Only two witnesses testified to the making of the agreement and its terms. They were the plaintiff and her father, both interested—the one legally; the other morally. Two other witnesses testified to declarations of William Golightly, and they differ from each other. To one he said "he would take the child, and at their (his and his wife's) death the child was to get one-half of the property;" to the other, "if she stayed till his wife died, she would get half that they had." In neither was there any reference to a contract to make a will. He may have merely expressed his intention to provide for the child in his will.

I think the testimony of plaintiff was competent. She did not testify to any transaction or communication between herself and deceased, but only to one between her father and deceased in her presence. *Sloan* v. *Hunter,* 56 S. C. 385, 34 S. E. 658, 76 Am. St. Rep. 551.

I am not prepared to assent to the proposition that in no case will the Court decree performance of a contract to devise land where it rests in parol and is proved only by parol evidence. The decision of that point is not necessary to the decision of this case. But if part performance of a parol contract to convey land will take a case out of the statute of frauds, why would not part performance of a contract to devise land have the same effect?

MR. CHIEF JUSTICE GARY dissents for the reasons stated in the decree of his Honor, the Circuit Judge, which is reported.