## WILSON v. GORDON.

1. ATTORNEYS—EVIDENCE—PRIVILEGED COMMUNICATIONS.—If an attorney draws two wills of like import for two persons upon joint request between them or those claiming under them, communications made by them to him are not privileged.

2. EVIDENCE—DECLARATIONS.—EVIDENCE of a decedent given in probate court in establishing a will in solemn form is competent on the issue of agreement to make mutual wills as a declaration against her right to revoke her will.

3. IBID.—DECLARATIONS in one's favor may be brought out on cross-examination when they are a part of the conversation brought out in chief.

4. WILLS—CONTRACT.—To establish a contract to make or not to make a will, an agreement definite and certain should be established by clear and convincing evidence. Such contracts may be established by direct proof or inferred from a conclusion of facts from the circumstances surrounding the parties. Little consideration should be given the evidence of those who claim the benefit of such contract. Two maiden sisters after conference on joint written request had two wills prepared by the same attorney, giving all the property of each to the other without limitation, with the provision that if devisee should die in lifetime of testator, the property should go to a niece and her children, *held* not to be mutual wills under proof here, and that surviving sister after having accepted the benefits of deceased sister's will might destroy her will.

MR. JUSTICE GARY *dissents.*

5. REAL PROPERTY.—THIS COURT has no power to adjudicate the claim by title paramount to land in question in cause here on appeal by one not a party to the cause on petition filed here, but judgment herein made without prejudice to rights of petitioner.

Before J. E. McDONALD, special Judge, Abbeville. Reversed.

Action by M. Harvey Wilson, in his own right, and as administrator of Jane L. Gordon *et al.* against Evans Gordon, Georgia C. Miller *et al.* From Circuit decree, the plaintiff and certain defendants appeal.

*Messrs. Wm. N. Graydon, H. J. Haynsworth, Thos. P. Cothran* and *Wm. P. Greene,* for appellant.

*Mr. Graydon* cites : *Proof to support specific performance:* 27 S. C., 348 ; 22 S. C., 367 ; 50 N. E., 1117. *This case is within statute of frauds:* 30 S. C., 612 ; 31 S. C., 60 ; 27 S. C., 60 ; Civil Code, 1902, secs. 2583, 2652, 2585. *Part of conversation coming out in chief, all may be brought out on cross-examination:* 29 S. C., 338 ; Abb. Trial Ev., 327 ; 57 S. C., 358. *Express trust cannot be shown by parol:* 57 S. C., 162 ; 52 S. C., 393.

*Mr. Haynsworth* cites : *Kind of evidence required to establish this contract:* 22 S. C., 466 ; 155 N. Y., 555 ; 3 Vesey Jr., 418 ; 10 L. R. A., 93 ; 57 S. C., 559 ; 70 S. C., 454.

*Mr. Greene* cites : *That a will was made according to a previous scheme and conference is competent on issue of sanity of testator:* 7 Rich. L., 474 ; 49 S. C., 169. *Contract cannot be proved by parol:* Civil Code, 1902, sec. 2652. *And no such performance as takes this case out of the statute:* 25 S. C., 519 ; 21 S. C., 492 ; 1 Rich. Eq., 134. *Statute applies to contract to make wills:* 132 Ill., 312 ; 54 Am. St. R., 473 ; 38 Am. St. R., 379 ; 11 Am. St. R., 46.

*Messrs. Tribble & Prince, Frank B. Gary* and *J. P. Carey,* contra.

*Mr. Gary* cites : *Contract to make wills cannot be rescinded except by consent of both:* 1 Dick., 419 ; Ves. Jr., 402 ; Redfern on Wills, 183 ; 29 Ency., 138. *What is mutual will?* 1 Underhill, 181 ; 22 S. C., 454 ; 38 L. R. A., 292 ; 3 DeS., 514 ; Harp. Eq., 213 ; 49 S. C., 62. *Equity will enforce such contract: Bruce* v. *Moon,* 57 S. C. ; *Fogle* v. *St. Michael Ch.,* 48 S. C. ; 49 S. C., 62 ; *Moffatt* v. *Hardin,* 22 S. C. ; 23 Ency., 2 ed., 76.

*Mr. Carey* cites : *Communications by sisters to their attorney are not privileged in this action:* 23 Ency., 76 ; 165 U. S., 406 ; 34 Am. St. R., 258 ; 66 A. S. R., 202 ; 84 N. Y., 643 ; 1 Green., sec. 239 ; 3 A. S. R., 599 ; 23 Ency., 62 ; 1 A. S. R., 570 ; 2 A. S. R., 696 ; 4 A. S. R., 835 ; 39 S. C., 146 ;

43 A. S. R., 803. *Record of probate court is competent:* 57 S. C., 559; 1 Ency., 719-722; 22 S. C., 425; 18 S. C., 123; 30 S. C., 43; 97 U. S., 110; 1 N. & McC., 409; Riley L., 208. *Testimony of W. L. Milford was incompetent:* 1 Green. Ev., 467; Taylor on Ev., 733; 1 Phil. Ev., 416; 48 S. C., 136; 9 Ency., 5; 55 S. C., 343. *Mutual agreement may be established by parol:* 57 S. C., 67, 559. *What kind of an agreement must be shown:* 22 S. C., 454; 57 S. C., 559; 3 Ves., 419; 1 Jar. on Wills, 31; Redfield on Wills, 183; Schouler, sec. 455; Underhill, 18; 29 Ency., 138; 1 Dick., 419; 1 Brad., 476; 68 Am. Dec., 404; 3 DeS. Eq., 195; 22 S. C., 454; 48 S. C., 86; 57 S. C., 576, 60.

December 22, 1905. The opinion of the Court was delivered by

MR. JUSTICE WOODS. This is an action for the partition of the lands of Miss Jane L. Gordon, who died in 1902, intestate, having destroyed her will a short time before her death. Mrs. Jane W. Crymes, a niece, and her children, who are defendants in the cause, deny the right to partition, claiming the entire property under the allegation that Jane L. Gordon and her sister, Mary Gordon, in pursuance of a binding agreement between them, executed mutual wills, each giving to the other her entire property, with a provision in the will of each testatrix that if her sister should die in the lifetime of the testatrix her property should go to Mrs. Crymes and her children; that the destruction of her will by Jane L. Gordon after the death of her sister was a violation of the contract of which Mrs. Crymes and her children were the beneficiaries, and that in enforcement of the contract the Court should decree the title to the property to be in them as if the will had not been destroyed. It is admitted by the other heirs of Jane L. Gordon that she and her sister Mary did execute contemporaneously wills of this purport, but the case turns on the issue whether these wills were executed in pursuance of a contract which bound the survivor to leave

her will so made in force at her death. The referee to whom
the cause was submitted held there was no such contract, but
the Circuit Judge came to the opposite conclusion.

We consider first the exceptions charging error in the ad-
mission and in the exclusion of evidence. It is not neces-
sary to decide whether an agreement to make a will in the
future devising real estate may be proved by parol. Here
the wills were actually made, and the testatrix who undertook
to revoke after the death of her sister had received the full
benefit of the provisions of her will. The case is, therefore,
stronger on this point than *Turnipseed* v. *Sirrine,* 57 S. C.,
569, 35 S. E., 751, where such evidence was held competent,
and stands on the same ground in this respect as *Bruce* v.
*Moon,* 57 S. C., 60, 35 S. E., 415.

The two wills were drawn by Col. J. N. Brown as attor-
ney for both sisters, and appellants submit his testimony as
to the contents of the letter of instruction, and the prepa-
ration of the wills should have been excluded as a
privileged communication from client to attorney.

Mrs. Crymes and her children claim against the heirs
of Jane L. Gordon through a contract alleged to have been
made by her with Mary Gordon. If Col. Brown was the
confidential attorney of either of these ladies, he occupied
that relation to both, and as between them or those claiming
under them the communications made by them to him were
not privileged, especially as these communications related to
instructions for drawing their wills. *Moffatt* v. *Hardin,*
22 S. C., 9; *O'Brien* v. *Spalding,* 66 Am. St. Rep., 202, note.

The testimony of Jane L. Gordon taken by the probate
judge in proving in solemn form the will of Mary
Gordon was admitted as the declaration against her
right to revoke her will. We do not perceive on what
grounds this evidence could be regarded incompetent, and
none has been suggested in argument.

W. J. Milford testified on behalf of respondents that
Jane L. Gordon told him she had destroyed her will. Upon

the cross-examination, in giving the remainder of the con-
versation, he testified: "She said she advised her
sister that both could destroy their wills, but she would
not do it.   She (Miss Mary) said would let hers go
as she had made it.   It might save each other some trouble,
but that Miss Jane might destroy hers if she wanted, but if
both destroyed it might cause some trouble."   "The general
rule upon this subject is that while it is competent to intro-
duce declarations of a party against his interests, it is not
competent to introduce his declarations in his own favor,
unless they were made in, and constitute a part of, the con-
versation brought out by the other side; and this we under-
stand to have been the ruling of the Circuit Judge, in which
we think there was no error." *Williams* v. *Mower*, 29 S. C.,
332, 338, 7 S. E., 505.   Under this rule, when in the effort
to show the destruction of the will after the death of her
sister, in violation of the contract not to do so after she had
received the benefits of the contract, Miss Jane's declaration
to the witness that she had burned her will was introduced,
it was competent for the witness to testify at least that she
told him in the same conversation of having given notice to
Miss Mary of her intention to destroy it.

The vital question is whether Jane L. Gordon made the
will which she destroyed in pursuance of a contract with her
sister Mary Gordon, the consideration being the execution
of a will by Mary Gordon under which Jane L. Gor-
don received her property.   If the wills of the sisters
were made under a mutual contract, and Jane L.
Gordon did not give notice to her sister of her intention to
revoke so that she could revoke also, then the right of Mrs.
Crymes as a beneficiary of the contract to take the property
that would have passed to her under the will of the survivor
is unquestioned.

A contract to make a certain disposition of property by
will is as valid as any other contract.   Citing 3 Pomeroy's
Equity Jurisprudence, sec. 1244, Chief Justice Simpson, in
discussing such contracts, says, in *McKeegan* v. *O'Neill*,

22 S. C., 455, 467: "Agreements may be divided into two classes, distinguished by the mode in which they are made. 1. The ordinary agreement, where an intentional offer is made on the one side founded upon a sufficient consideration, and an intentional acceptance on the other, resulting in the meeting of minds upon the same terms. 2. 'Where it is created by representations made by one party and acts done by the other upon the faith of such representations. Where an absolute, unconditional representation of something to be done in the future is made by one person in order to accomplish a particular purpose, and the person to whom it is made, relying upon it, does the act by which the intended result is obtained and purpose accomplished, a contract is thereby concluded between the parties.'" Such contracts may be established by direct proof of an express promise or inferred as a conclusion of fact from the circumstances surrounding the parties. But where a contract to make or not to revoke a will is set up there are strong reasons for requiring an agreement definite and certain established by evidence clear and convincing. The evidence comes from the living against the dead, who cannot speak in his own behalf in disproof of a charge of the violation of a solemn obligation. For this reason it is obvious little if any consideration should be given to the testimony of those who claim the benefit of such a contract. On account of the secrecy observed by most persons as to the will they expect to make, there is little general discussion of the subject, and it is therefore difficult to disprove any intention or agreement attributed to a testator. Again, the discussion by two persons bound to each other by the closest ties of affection as to disposition of their property resulting in separate wills by which the property of each was left to the other, affords no ground for the inference that either undertook or exacted a legal obligation.

Such action may be far more reasonably attributed to the promptings of affection, and courts should not introduce the

mercenary element except upon clear affirmative proof that it was present within the understanding of both parties.

With this statement of the character and strength of the evidence which ought to be required in cases of this kind, we consider that which is here offered. Mary Gordon and Jane Gordon were maiden sisters, who lived together until the death of the former at the age of eighty-two. They were devoted to each other, and seem to have lived very much in common, though keeping their property separate. Mrs. Crymes was a favorite niece, who lived with them from infancy until her marriage at the age of eighteen, and after her marriage frequently visited at their home, their affection for her being apparently unchanged. In 1892, after consulting with each other, they came to the common determination to make wills, and communicated their intentions to the husband of Mrs. Crymes. As a result of consultation with him, they sent written instructions signed by both of them to Col. J. N. Brown, an attorney living in Anderson, who prepared the wills as directed, the language used in each being precisely the same, except for the transposition of the names. Each devised and bequeathed her entire property to the other without limitation, but provided that if her sister should die during the lifetime of the testatrix, her property should go to Mrs. Crymes and her children. The old ladies executed the wills at their home at the same time and in presence of the same witnesses, but neither of them said anything as to any agreement to make them or not to revoke them, or as to their terms or the motives and intentions by which they were actuated. Miss Mary Gordon died in 1894, and her sister Jane took her entire property under her will. Proof of this will in solemn form having been required, Miss Jane Gordon testified at the hearing, and as her evidence taken by the probate judge is relied on to support the alleged agreement, so much of it as is pertinent is quoted:

"Col. Brown, of Anderson, drew up the will of sister Mary W. Gordon. Sister sent instructions by Mr. Crymes to Col. Brown for making the wills in December. She gave

11—73

in all her property at the time and stated that she wanted
me and Mrs. Crymes and her children to have all she had.
She raised Mrs. Crymes from infancy, and that is why
she gave the property to her.   She took Mrs. Crymes when
she was but three weeks old.   Mr. Crymes sent the wills
down in January, I think.   We read the wills and laid them
away and were a little careless about signing them.   People
don't generally talk about their wills, that is left till they
are gone.   Mary was in her 83d year when she died.   She
never made any other will.   We consulted each other often
about making our wills.   We spoke of Judge Lyon as the
proper person to draw our wills, but finally agreed to get
Col. Brown to draw them.   I think Mary's will was signed
first.   She read her will often before it was signed.   She
knew all about her property, and gave Mr. Milford special
instructions about her business.   She suggested the making
of the wills.   The instructions to Col. Brown for making the
wills were written by her.   *. * *   None of the relatives
were consulted about making the wills."   Mrs. Crymes testi-
fied that Miss Jane gave this additional testimony, which
was not taken down by the probate judge: "Miss Jane L.
Gordon testified that my aunts had agreed to make wills, and
had so agreed for a long time, but did not carry the agree-
ment out until after her brother's death.   She said that my
husband had confidence in Col. Brown, and that she was will-
ing for him to do such work.   She said that my aunt had
said she wanted to leave her property to the widow and
fatherless.   This was not put down, but she said it."   Miss
Mary on her death-bed said to Mr. Milford that he had
witnessed her will, and she wanted him to see it fully carried
out.   After the death of her sister, Miss Jane having become
dissatisfied with the settlement made by the executor of her
sister's will, burned her own.

This is the testimony upon which the Court is asked to
find that the wills were made in pursuance of a binding con-
tract.   It will be observed the only direct evidence that the
sisters had *agreed* to make wills is the statement attributed

by Mrs. Crymes to Miss Jane in her testimony before the probate judge, but this is not borne out by the written version of her evidence taken by the probate judge, and is not corroborated by any witness present at that hearing. Assuming, however, that this testimony is true and uncolored by any feeling of self-interest, it is very far from proving an admission by Miss Jane of a binding contract between the sisters to make wills, the one being the consideration for the other. The testimony establishes conclusively an almost common life, mutual affection for each other, common purposes, common affection for Mrs. Crymes, conference and agreement as to the wisdom of making wills, and the terms in which they should be made. But this flowing together of life, thought and action so far from importing that what they did for each other was the result of contract, a benefit received being regarded the consideration of another bestowed, connotes the mutual bestowal of benefits growing out of devotion and intimate association entirely independent of consideration and without thought of contract. Contract imports the standing apart and coming together as the result of an agreement for a consideration. The distinction is forcibly illustrated by the case of *Gardner* v. *Gardner,* 49 S. C., 62, where the parties stood in antagonism to each other, and after the execution of a will by one, as it was alleged, in pursuance of a contract to settle the dispute, the others ceased to press their claim. On the other hand, these wills were the result of the union of life and purpose, and not of a negotiation between the sisters in which each as a separate party represented her own interest. It was most natural that each should wish to bestow upon her sister her entire property, and no contract can be implied from the fact that this reasonable and natural testamentary disposition was made. That the wills were made at the same time is of little, if any, significance, when the close association and common life are considered. The testimony of Miss Jane before the probate court as to why Miss Mary wished to give property to Mrs. Crymes and her children

was manifestly offered to establish Miss Mary's sanity, which was in issue, by showing that she had reasonable motives and knew, the objects of her bounty. All the facts relied on as implying a contract to make mutual wills are entirely consistent with the absence of contract, and the presence of the union of life and mutual affection as the impelling motive.

In *Dufour* v. *Periera,* 1 Dick., 419, the will itself contained words indicating an intention to make a binding contract. In *Bruce* v. *Moon,* 57 S. C., 60, 35 S. E., 415, and *Turnipseed* v. *Sirrine,* 57 S. C., 559, 35 S. E., 157, distinct and definite contracts were proved by indisputable evidence. No case has been cited, and we have been able to find none where a contract was held to be established by evidence so uncertain as is offered here. The facts are singularly like those which were held in *Edson* v. *Parsons,* 50 N. E., 1117 (N. Y.), and Cawley's Appeal, 10 L. R. A., 93 (Pa.), not to imply a contract. The latter case is cited with approval in *Buchanan* v. *Anderson,* 70 S. C., 454. See, also, note to *In re Davis,* 38 L. R. A., 289.

But there are some facts which go very far towards disproving any contract. Not only was there no intimation from either of the sisters that they so understood it in the lifetime of Miss Mary, but the terms of the wills are very significant. They were prepared with great care and after much consideration. The fact that there was an absolute devise from each sister to the other without limitation, was strong evidence that there was no intention to limit the power of alienation. When an intention is reduced to writing either in the form of a will or a contract, there is always a strong implication of fact that the whole intention has been expressed, and an implication still stronger that there is no agreement or intention contrary to that expressed.

The evidence is far from clear and convincing that Jane L. Gordon made an intentional offer to make a will as a consideration for a will to be made by her sister, or that her sister intentionally accepted such an offer; or that Jane L.

Gordon made an absolute representation that she would make a will in order to induce her sister to make one of like import in her favor. The right to dispose of property by will would be seriously jeopardized if it were held to be surrendered upon such meagre proof as is here offered.

. A petition has been filed very recently in this Court by S. L. Miller and others, who claim land involved in this litigation by title paramount to Mary Gordon and Jane Gordon. This Court has no power to adjudge their rights at this stage of the litigation, but this judgment is without prejudice to any proceedings they may be advised to institute in the Circuit Court.

The judgment of this Court is, that the judgment of the Circuit Court be reversed, and the cause be remanded for further proceedings consistent with this opinion.

MR. JUSTICE GARY. I cannot concur in the conclusion announced in the opinion of Mr. Justice Woods, as I think the judgment of the Circuit Court should be affirmed for the reasons therein stated.