17029

THOMAS A. ELLISOR, Respondent, v. FLORENCE REBECCA WATTS, Appellant

(88 S. E. (2d) 351)

412

*Henry C. Holloway, Esq.,* of Newberry, *for Appellant,*

*Messrs. Pope & Greene,* of Newberry, *for Respondent,*

*Henry C. Holloway, Esq.,* of Newberry, *for Appellant, in reply,*

July 12, 1955.

OXNER, Justice.

This is an action to partition 80 acres of land in Newberry County, known as the Piester lands. This property was formerly owned by S. R. Metts, P. B. Ellisor and his wife, Mrs. Texanna E. Ellisor. Mrs. Ellisor held an undivided one-half interest and each of the other two tenants in common an undivided one-fourth interest. On February 18, 1927, Metts conveyed his undivided one-fourth interest to appellant, Mrs. Florence Rebecca Watts. Thereafter, the record not disclosing the date, Mr. and Mrs. Ellisor executed the following will:

"We, Pierce B. Ellisor and Texanna E. Ellisor, residents of Newberry County, said State, being of sound mind, do make the following writing as and for our last will and testament to wit: (1) We direct the payment of all legal demands against our estate as soon after our death as may be practicable which we direct first to be paid out of the personal property; (2) We give and bequeath all our real estate, known as the Piester Lands, to our daughter, Rebecca Watts."

P. B. Ellisor died on June 2, 1936, leaving as his sole heirs at law his widow, Texanna E. Ellisor, a son, Thomas A. Ellisor, respondent on this appeal, and a daughter, Florence Rebecca Watts. On June 28, 1936, Thomas A. Ellisor was appointed administrator of his estate. On July 26, 1937, the instrument above mentioned was offered for probate by Mrs. Watts as the will of her father.

On February 3, 1937, Mrs. Ellisor conveyed to her son, Thomas A. Ellisor, all her undivided right, title and interest in the lands in question, describing such interest as "a one-half interest belonging to me of my own right and also my inheritable interest in the one-fourth interest of my husband, the late P. B. Ellisor, deceased." Mrs. Ellisor died on November 24, 1939, and on January 26, 1940, the will referred to above was admitted to probate as her last will and testament.

In 1940 this action for partition was instituted. Respondent asked that the premises be sold and that the proceeds of sale, after payment of the debts of P. B. Ellisor, be equally divided between him and appellant. In her answer appellant denied that respondent had any interest in the property and alleged that she was the sole owner.

The only question for determination is whether the will mentioned was executed pursuant to a contract and became irrevocable upon the death of Mr. Ellisor. If so, a Court of Equity will enforce the contract and declare invalid the conveyance by Mrs. Ellisor to her son. This would give appellant, Mrs. Watts, the entire fee. On the other hand, if this will was not of a contractual nature, the deed to Thomas A. Ellisor must be upheld. Under this construction, Mrs. Watts would own an undivided one-half interest, consisting of the undivided one-fourth interest which she acquired from Metts and a one-fourth undivided interest acquired under the will of her father, and respondent, Thomas A. Ellisor, would own the other undivided one-half interest. Of course, any inheritance from P. B. Ellisor would be subject to the payment of any valid claims against his estate.

The special referee, to whom the case was referred, concluded that this will created a contractual obligation on the part of Mr. and Mrs. Ellisor to devise the property to their daughter, which became irrevocable upon the death of Mr. Ellisor. The Circuit Judge reached a different conclusion. He held that the will imposed no legal obligation upon Mrs. Ellisor, who was at liberty after the death of her husband to dispose of her interest in the property as she saw fit.

No testimony was offered by either of the parties as to any contract between Mr. and Mrs. Ellisor to devise their interest in this property to their daughter. It is appellant's contention that the will itself constitutes sufficient evidence of such a contract.

The great weight of authority is to the effect that the execution concurrently by two persons of separate wills which are reciprocal in their provisions, or which are identical in the disposition of the property of each, is not alone sufficient to establish that they were executed pursuant to a contract between the makers. Our decisions so hold. *Wilson v. Gordon,* 73 S. C. 155, 53 S. E. 79; *Dicks v. Cassels,* 100 S. C. 341, 84 S. E. 878. Each of these cases involved mutual wills contemporaneously executed and the Court held that there must be proof of a contract *aliunde* the instrument.

Learned counsel for appellant in his excellent brief states that the foregoing rule relating to mutual wills is not applicable and argues that there is a legitimate distinction where, as here, a joint will is involved. He says that where a will is executed jointly by a husband and wife in which the spouses leave their property to a third person in whose welfare they have a common interest, the execution of such will alone constitutes positive proof that it was the fruition of a contract between the testators. It must be conceded that there are cases so holding. Other courts, however, which apparently represent the majority view, hold that the execution of a joint will is not of itself sufficient to establish a testamentary compact. According to these authorities, it does not follow merely because a husband and wife jointly sign a will, that the same was made in pursuance of a contract between the spouses or that the devises therein contained are irrevocable. 57 Am. Jur., Wills, Section 731. An excellent discussion of the subject will be found in an annotation in 169 A. L. R., beginning on page 9, and 61 Harvard Law Review, page 675.

The question of whether the execution of a joint will is of itself, without reference to the terms of the instrument, sufficient evidence of the existence of a contract to bequeath or devise property, so as to make the contract enforceable in equity, has never been squarely presented to this Court. Our decision in *Buchanan v. Anderson,* 70 S. C. 454, 50 S.

E. 12, has been cited in a number of other jurisdictions as supporting a negative answer to the foregoing question, but we doubt whether this decision reasonably warrants that interpretation. In that case a man and his wife made a joint and mutual will, giving their property to the survivor for life with remainder over to others. The wife, who owned no property, first died and the question arose as to whether said instrument constituted an implied agreement on the part of the husband to dispose of his property according to the terms of the will. The Court held that any such contract would be unenforceable for lack of consideration. The instant case involves a distinguishing feature in that here both makers of the will had an interest as tenants in common in the property sought to be devised.

The question presented, therefore, must be decided ██ without aid of precedent from this Court. We think the better view is that the mere fact of the execution by husband and wife of a joint will is not alone sufficient to evidence a contractual obligation. As stated by Justice Woods in speaking of mutual wills in *Wilson v. Gordon, supra,* 73 S. C. 155, 53 S. E. 79, 82, the instrument may reasonably be regarded as a testamentary disposition "growing out of devotion and intimate association entirely independent of consideration and without thought of contract." Of course, such a joint will may contain provisions or expressions which indicate that it was executed pursuant to a contract between the parties. "Proof of a testamentary compact may expressly appear in the language of the instrument, or it may be supplied by competent witnesses who testify to admissions of the testators, or it may result as an implication from the circumstances and relations of the parties and what they have actually provided for by the instrument. Direct evidence is not necessary." *Williams v. Williams,* 123 Va. 643, 96 S. E. 749, 751.

There being no testimony in the instant case on the ██ question of contract, does the instrument itself import one? We find nothing therein evidencing a con-

tractual obligation. The makers, after providing for the payment of their debts, merely devised their interest in the property to their daughter, who already had an undivided one-fourth interest. Some courts hold that reciprocal testamentary provisions in a joint will strongly indicate that same was made in pursuance of a contract between the makers. The weight to be given this factor need not now be determined because the instrument involved in this case contains no provisions of this nature. Mrs. Ellisor, after the death of her husband, received no benefits under the will. We cannot escape the conclusion that the instrument must be regarded as in effect a separate will by Mr. and Mrs. Ellisor devising the interest of each to the daughter.

Affirmed.

BAKER, C. J., and STUKES, TAYLOR and LEGGE, JJ., concur.