20749

Fletcher PRUITT, Respondent, v. Leola MOSS, Hugh Tolbert, Napolen Tolbert, Willie Ray Aiken, Mae Ella Davis, and T. L. Hughston, Jr., as Executor of the Estate of Charlie Tolbert, Appellants.

(247 S. E. (2d) 324)

*Judson A. Ayers, Jr.,* and *Mary G. Daniel,* Greenwood, *for appellants.*

*Theo Walker Mitchell,* Greenville, *for respondent.*

August 23, 1978.

LITTLEJOHN, Justice.

Respondent Fletcher Pruitt (Pruitt) commenced this action for the purpose of ascertaining the legal effect of a joint will executed in 1957 by his mother, Maggie Pruitt Tolbert, and step-father, Charlie Tolbert. This will created a testamentary plan whereby the surviving testator would inherit a life estate in the deceased testator's one-half undivided interest in a 41 acre tract of land, owned by the two testators as tenants in common. Upon the survivor's death, a 10 acre parcel of the aforesaid tract, containing the testators' homeplace, would go to Pruitt in fee simple. The remainder interests were separately bequeathed to different parties.

In 1971, Maggie Tolbert died and her 1957 will was probated. Charlie Tolbert took under her joint will. In 1973, Charlie Tolbert executed a new will in which he devised his one-half undivided interest in the 41 acre tract to his brothers and sisters of the whole blood and to a nephew, the son of a deceased sister, appellants herein. The effect of this later will was to deprive his step-son, Pruitt, of the 10 acre parcel bequeathed him in the joint will, thereby defeating the mother's intent to provide for her son.

After the second will of Charlie Tolbert was admitted to probate in common form, counsel for Pruitt wrote to the probate court seeking ". . . a clarification of the construction

of these two wills, . . ." Following the submission of briefs, the probate court admitted the second will and codicil of Charlie Tolbert to probate in solemn form. This action followed.

At the hearing before the trial judge, no testimony was taken and the matter was submitted on the pleadings and briefs. By its decree, the lower court held that Charlie Tolbert was bound by contract with Maggie Pruit Tolbert to will the 10 acre parcel of land to Pruitt, and that Charlie Tolbert's second will was not effective as to any devise of this 10 acre parcel. The court declared Pruitt the owner of the 10 acres, and declared the balance of the subject real estate to be owned 50 percent by Pruitt and 50 percent by appellants, who are devisees under the second will. These devisees appeal.

Appellants argue that there is no evidence or proof that there was any contractual understanding between Charlie and Maggie Tolbert which could in any manner make their will irrevocable at the death of either party. They submit that the will was made, not as a result of a contractual undertaking, but rather because of their life together as husband and wife. Finally, they argue that neither the 1957 will nor the circumstances surrounding the making of the will meet the standard of clear and convincing proof which is necessary to support a finding of a contract making the will irrevocable at the death of one of the testators.

Pruitt argues that proof of a testamentary compact may be implied by the language used in the will and the circumstances and relations of the parties. He maintains that the promises of the testators to will to each other their interests in the 41 acre tract was adequate consideration to support the contract, and that after Charlie Tolbert had accepted the benefits under Maggie Tolbert's will, he could not revoke his will to the detriment of Pruitt.

The will under consideration reads, in pertinent part, as follows:

"We, Charley Tolbert, and Maggie P. Tolbert, man and wife, do make, ordain, publish and declare, this as and for our last will and testament, hereby revoking all instruments of a testamentary nature by us heretofore made. We both being of sound mind and discretion but being mindful of the uncertainties of life.

Item. I. We do direct out executor hereinafter named to pay all out just debts with the first money coming in to his or her hands.

Item 2. We, and each of us do hereby will, devise to the survivor of us all of the Forty One Tract of Land formerally belonging to Dr. W. L. Pressly estate and deeded to Charley Tolbert by the daughters of Dr. W. L. Pressly for and during the natural life of the survivor of us. That is to say that I do hereby will and bequeath to my wife, (I Charley Tolbert) Maggie P. Pruitt to be hers for and during her natural life, remainder to be willed in a later paragraph. And I Maggie P. Tolbert who am now owner of one-half undivided interest in said Forty One Acre tract of land secured from the DR. W. L. Pressly estate, to will and devise to Charley Tolbert for and during his natural life—and I do will devise and bequeath to my son Fletcher Pruitt the remainder of said land. It is our intention as herein expressed for the survivor of each of us to have the land during (their) his or her natural life with right to use the same to the best interest of the survivor—subject to pargaraphs hereinafter written.

Item 3. We both, Charlie Tolbert and Maggie P. Tolbert do hereby will devise and bequeath to Fletcher Pruitt, our son and stepson, ten acres of the above Forty One Acres of land bought from Dr. W. L. Pressly Estate, and be his absolutely after our death—after the life estate of both of us comes to an end. The said Ten Acres of land to include the house in which we live and fronting in the Abbeville-Due West Highway, and all out buildings on this ten acres or on the entire place—including the lake and pasture—and

marked off on plat of the entire place for descriptive purposes.

Item 4. —I Charley Tolbert not having disposed of my interest in the balance of the above mentioned land not disposed of after the death of my wife—do will devise and bequeath to my brothers and sisters of the whole blood (None of the half blood) the balance of said 41 acres, after the death of my wife and after the fee simple estate in the ten acre tract of land above devised to Fletcher Pruitt. Fletcher Pruitt takes the ten acres above named, after the death of my said wife in fee simple and my brothers and sisters of the whole blood get the balance. . . ."

(All obvious errors are *sic.* per original.)

The theory adopted by the lower court, and now urged by Pruitt, is that the joint will was the result of a contractual understanding between the testators, which became a binding contractual obligation on Charlie Tolbert after Maggie Tolbert died and Charlie accepted benefits under the will. The court stated that the terms of will, considered in the light of circumstances, were sufficient to prove the existence of a contractual undertaking, citing 169 A. L. R. at 69-70.

This court has held in numerous cases that when an oral contract to make a will is relied upon:

"[I]t is necessary that such contract be established by clear, cogent and convincing evidence which carries irresistible conviction to the mind that such a contract actually existed and that the parties thereto understood and acquiesced to its terms. . . ." *Havird v. Schissell,* 251 S. C. 416, 162 S. E. (2d) 877 (1968); *Hayes v. Israel,* 242 S. C. 497, 131 S. E. (2d) 506 (1963). *See, also, Dicks v. Cassels,* 100 S. C. 341, 84 S. E. 878 (1915); *Wilson v. Gordon,* 73 S. C. 155, 53 S. E. 79 (1905); *Stuckey v. Truett,* 124 S. C. 122, 117 S. E. 192 (1923); *Looper v. Whitaker,* 231 S. C. 219, 98 S. E. (2d) 266 (1957).

Proof of a contract to make a will need not, however, be by direct evidence. In *Ellisor v. Watts,* 227 S. C. 411, 88 S. E. (2d) 351 (1955), the court stated:

"Proof of a testamentary compact may expressly appear in the language of the instrument, or it may be supplied by competent witnesses who testify to admissions of the testators, or it may result as an implication from the circumstances and relations of the parties and what they have actually provided for by the instruments."

However, "the mere fact of the execution by husband and wife of a joint will is not alone sufficient to evidence a contractual obligation." *Ellisor v. Watts, supra.*

In *Ellisor,* a husband and wife, tenants in common in the property sought to be devised, executed a joint will devising their respective interests in the property to their daughter. When the husband died, the joint will was admitted to probate. After the husband's death, the wife conveyed all her interest in the property to her son. The son later brought a partition action, in which it was held by the lower court that the will imposed no legal obligation upon the wife to refrain from disposing of her interest which would have passed under the joint will. The position taken by appellant daughter was that the will itself constituted sufficient evidence of a testamentary compact. The court held that the mere execution of a joint will alone was not sufficient to evidence a contractual obligation. However, the court noted that some courts hold that the existence of reciprocal testamentary provisions in a joint will is a strong indication that the will was made pursuant to a contract. Since there were no reciprocal provisions contained in the *Ellisor* will, and the wife received no benefits thereunder, the court found it unnecessary to decide what weight to be given to reciprocal provisions in a joint will.

While the precise question before us appears to be one of novel impression in this jurisdiction, other jurisdictions have taken the position that:

"Reciprocal provisions, as well as bequests to a third person in whose welfare the testators have a common interest, in a will executed jointly by husband and wife, . . . [are] in themselves evidence that the will was the fruition of a contract between the testators. The theory is that it is not possible that a will of such form could be executed without some previous understanding or agreement between the testators." 169 A. L. R. at 71-72. *See, also,* 79 Am. Jur. (2d), *Wills* § 791.

The conclusion is inescapable that Charlie Tolbert and Maggie Tolbert, through mutual agreement, worked out a plan for disposing of the property which they owned jointly. A part of the plan included provision for her own son. Failure to carry out the plan would, in effect, prevent Pruitt from inheriting the homeplace and the 10 acre parcel upon which it was situated. The terms of the will provided a benefit to Charlie, which Maggie did not have to provide. In exchange for willing to Charlie an interest in her estate, we think that Charlie agreed for his wife's son to have the 10 acre tract.

In the case of *Iwerson v. Dushek,* 260 Ark 771, 543 S. W. (2d) 942 (1976), husband and wife executed a joint will with reciprocal provisions granting the surviving testator a life estate in the decedent's property, with the remainder interest to be divided among the husband's daughter, the wife's brother, and the children a third person. After the wife's death, the husband executed a holographic will leaving his entire estate to his daughter, and conveyed the assets of the wife's estate in trust for the exclusive benefit of himself and his daughter.

The Arkansas Supreme Court, in finding that the joint wills were the result of a contract between the testators, stated:

"Here the wills are not only reciprocal in terms, but both are contained in one document, executed by the testators contemporaneously and necessarily in identical terms. The

document and the circumstances surrounding it indicate an agreement by [husband] and [wife] concerning disposition of their properties. In fact the document is itself in the nature of a contract, being dated, signed by the parties and signatures witnessed by three persons." 543 S. W. (2d) at 944.

We approve of the rationale expressed by the Arkansas Supreme Court, and find it particularly applicable to the case *sub judice*. We have no difficulty in concluding that the language employed in, and the terms of, the Tolbert will evidence the fact that the will was the product of a testamentary compact, which became contractually binding on the husband at the time he received benefits under the wife's will.

Accordingly, the judgment of the lower court is

Affirmed.

LEWIS, C. J., and NESS, RHODES and GREGORY, JJ., concur.