# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

In RE: Estate of Stephen Day Ward, Jr.,

Ann Noble-Kiley as Personal Representative of the
Estate of Mary K. Ward a/k/a Mary Kimberly Ward,
Respondent

v.

Stephanie Ward Cibinic, David D. Ward, and Brian C.
Ward, Personal Representatives, Appellants.

Appellate Case No. 2019-002124

———————

Appeal From Charleston County
Jennifer B. McCoy, Circuit Court Judge
Irvin G. Condon, Probate Judge

———————

Opinion No. 6073
Heard December 6, 2022 – Filed July 24, 2024

———————

## AFFIRMED

———————

George Edmondston Morrison, of Burr & Forman, LLP,
of Charleston, for Appellants.

Jane A. McFaddin, of Charleston, for Respondent.

———————

**MCDONALD, J.:** In this dispute over the estate of the late Stephen Day Ward, Jr.,
Stephanie Ward Cibinic, David D. Ward, and Brian C. Ward (collectively,
Appellants) challenge the finding that their father's surviving wife, Mary K. Ward,

was entitled to an omitted spouse's share.[1]  We affirm the orders of the probate and circuit courts.

**Facts and Procedural History**

In 1998, Stephen Ward, a retired grain trader, married his third wife, Nancy Diemer.  On April 21, 2005, Stephen and Nancy executed a series of documents with interlocking provisions intended to guide the disposal of their assets upon their deaths.  The couple generally intended that the death of one would cause their assets to "pour over" into a trust controlled by the other.  After the death of the surviving spouse, any remaining assets would be dispersed among each spouse's children and heirs as detailed in their wills and trust documents.  Of the documents the couple executed in 2005, the Last Will and Testament of Stephen D. Ward (the Will) and an Agreement for Mutual Wills and Trusts (the Agreement) are most relevant here.  It is undisputed that the Will is Stephen's validly executed final will and that the Agreement is incorporated by reference into the Will.

The Agreement includes the following relevant provisions:

> 2.5  The Wills and Trusts of the Parties have been made as they are on the condition that the disposition of the Property be made according to their Wills and Trusts, unless this Agreement is altered, amended or revoked as provided for hereinafter.

> 2.6  This Agreement is made to insure that the mutual plan of the Parties shall not be altered by acts subsequent to [the] date hereof, except as agreed upon between the Parties.

> . . . .

> 3.2  Upon the Predecessor's death, this Agreement and the Survivor's Will and Trust shall become irrevocable and the Survivor shall have no right or power to thereafter alter, amend or revoke this Agreement or his or her Will or Trust.

---

[1] Appellants are Stephen's three children from his first marriage.

SURVIVOR'S AFFIRMATIVE COVENANTS.  The parties mutually covenant with each other and agree that if he or she is the Survivor of them:

4.1  He or she will take such measures as may be necessary or required to maintain his or her Will and Trust in full force until his or her death and as will maintain title to the Property in a form that shall cause the same, at the Survivor's death, to be disposed of according to the terms and provisions of his or her Will and Trust annexed hereto.

4.2  If he or she remarries after the death of the Predecessor, he or she will:

> 4.2.1  Thereafter ratify his or her Will and Trust in the form and with the provisions contained in his or her Will and Trust annexed hereto; and

> 4.2.2  As a condition of such re-marriage, require any person he or she re-marries to legally and unconditionally waive his or her right to an Elective Share in the Property provided to them under S.C. Code Ann. Section 62-2-201 (1976, as amended from time to time).[2]

V.  NEGATIVE COVENANTS.  The Parties mutually covenant with each other and agree that if he or she is the survivor of them, he or she will not create, commit, permit, or suffer to exist:

5.1  Any condition that would alter the plan of distribution contained in his or her Will or Trust annexed hereto;

---

[2] The question of whether Mary had a right to an elective share is not before us; Mary petitioned for an omitted spouse's share.

5.2  Any condition that would cause the alteration, amendment or revocation of his or her Will or Trust annexed hereto;

. . . .

VII.  <u>MISCELLANEOUS</u>.

7.1  Governing Law.  This Agreement is made and shall be construed under and in accordance with the laws of the State of South Carolina.

Nancy died in June 2011.  Later that year, Stephen began dating Mary, and the two married in 2013.[3]  Mary moved into Stephen's home but retained ownership of her own house.  There is no evidence that Stephen took any action regarding his trust or the Will during this marriage or that he completed the acts required by sections 4.2.1 and 4.2.2 of the Agreement.

Stephen died on September 16, 2016.  Later that month, Appellants, acting as their father's co-personal representatives, sought to probate his estate.  In January 2017, Mary filed a petition through Ann Noble-Kiley, her conservator and daughter, seeking a declaration that Mary was an omitted spouse under Stephen's Will.  Appellants denied Mary's claim and asserted "it appears from the will and other evidence that [Mary's] omission was intentional and/or that [Mary] was provided for outside of the will."

Appellants moved for summary judgment as to Mary's petition, but the probate court denied this motion and Appellants' subsequent motion to reconsider.  At a later hearing on the merits of the petition, Mary's counsel explained the couple's marriage license had been submitted and Stephen's filed Will made no mention of Mary K. Ward, his surviving spouse.  Appellants argued in opposition to the petition that two statutory factors applied to defeat Mary's omitted spouse claim: Stephen's omission was intentional, and Mary had been provided for outside of the Will.  Mary challenged both assertions.

---

[3] Stephen was sixty-nine at the time of this marriage; Mary was eighty-eight.

Noble-Kiley testified in support of Mary's claim; she noted the date of the parties' marriage, date of Stephen's death, and her subsequent appointment as Mary's conservator. Appellants then moved for an involuntary nonsuit, asserting Mary failed to meet her burden of proof under the omitted spouse statute. The probate court referenced Stephen's Will and its omission of Mary, and Appellants' counsel asserted the incorporation of the Agreement further served to defeat Mary's claim. The probate court denied Appellants' motion for a nonsuit.

Appellants then presented a series of witnesses seeking to defeat Mary's claim under the omitted spouse statute.[4] Their first witness was Brett Bluestein, the attorney who drafted the Agreement, Stephen and Nancy's wills, and other related estate planning documents. Bluestein identified the various documents, and the probate court admitted them into evidence. Bluestein also discussed the use and purpose of an instrument like the Agreement, explaining:

> As a general theme, the only time [such an agreement] was used was in a situation where there's a husband and wife, often times, an older couple, and always a couple with children from a prior marriage—prior marriage and so forth, where the ultimate concern was what was going to happen after the death of the first spouse, in respect to [the] individual husband and wife's collective assets . . . . they would protect their assets with the ultimate distribution based on what was provided in their last will and testament of mutual trust.

When asked about Stephen's intent related to his estate planning, Bluestein responded that he "would not have drafted [a] mutual will and trust agreement, nor offered it up to [his] clients, unless it was crystal clear that their intent was to have that be enforced, and the wills that handled both trust agreements, enforced." Bluestein agreed Stephen's Will "provides that the [Agreement] was incorporated by reference into this Last Will and Testament." He also confirmed Stephen never came back "to amend, modify, or alter any of these estate planning documents," and he was unaware of any attempt by Stephen to change the testamentary instruments.

On cross-examination, Bluestein admitted the terms of the Agreement required Stephen to ratify his Will upon any remarriage. When asked whether such

---

[4] S.C. Code Ann. § 62-2-301 (2022).

ratification was "a mandatory thing," he responded, over objection, "Yes. It says that the survivor will, 'ratify his or her Will and Trust.' 4.2.1." Bluestein then clarified on redirect that his ratification response "had nothing to do with the effectiveness of the document based on whether or not it was ratified."

Appellants also called Stephen's friend, real estate agent Trisha Ernstrom. Ernstrom testified she had discussed with Stephen and Nancy the plans for their respective estates, and both "reiterated that they had an attorney and they had made proper preparations so the children would inherit the house and all their assets." Ernstrom recalled that after Nancy's death, she asked Stephen whether a potential marriage to Mary would alter his estate plan. Stephen responded: "That's a non-issue. That's—nothing's changing that. It's—it's staying the way it is. It's locked in."

On cross-examination, Ernstrom admitted she was the listing agent for Stephen's home and that she had discussed the listing with Stephen's children. At the conclusion of her testimony, the probate court asked whether Ernstrom knew "if Mr. Ward provided for Mary Ward outside of his Will?" Ernstrom responded, "I never really asked about how he provided for Mary or anything of that nature."

Stephen's son and co-personal representative Brian Ward testified that the parties filed joint tax returns but generally maintained separate finances. Although Mary lived with Stephen following their marriage, she did not sell her premarital home. Based on his review of certain financial information after his father's death, Brian was able to deduce that Mary received, either before or after Stephen's death: (1) approximately $4,000 remaining in a joint account the couple used for household expenses; (2) payment of a $1,600 delinquent property tax bill for the house Mary owned; (3) about $7,500 for medical expenses related to Mary's broken leg; (4) a timeshare in Las Vegas held in both spouses' names; (5) a leased Toyota Camry; and (6) the $17,000 capital percentage from a local club membership.[5]

---

[5] Brian and his two siblings also testified that Stephen assured them his estate plan would not be altered by his fourth marriage. However, the probate court sustained Mary's objections to some of this testimony based on the Dead Man's statute, *see* section 19-11-20 of the South Carolina Code (2014), and much of the testimony was proffered. Appellants contend Stephen's daughter, Stephanie Ward Cibinic, was allowed to testify without having that portion of her testimony proffered, but the record is unclear on this point. After Mary's objection at the beginning of Stephanie's testimony about a conversation with Stephen, the court responded: "I think this is just background right now. Let's see where it goes. Or do you want to

The probate court found Mary was entitled to an omitted spouse's share.  The court reasoned that the Will did not specifically mention Mary; that allowing "blanket" provisions to overcome the statutory omitted spouse's share violated public policy; that Stephen failed to follow the steps required in the Agreement to secure his estate plans; and the evidence did not demonstrate that the non-testamentary items Brian identified were intended by Stephen to provide for Mary in lieu of a bequest.

Appellants filed a Rule 59(e), SCRCP, motion to alter or amend, arguing the probate court conflated the laws applicable to a claimed elective share and those governing an omitted spouse.  The probate court then issued an amended order that differed rather substantially from its first ruling, but again found Stephen's failure to follow the Agreement's enforcement procedure demonstrated he "did not intentionally omit [Mary] from his Estate."  The probate court further found the non-testamentary gifts were not intended to supplant the need for a bequest.

Appellants then filed another Rule 59(e) motion.  Upon the probate court's denial of this motion, Appellants appealed to the circuit court.  Following a hearing, the circuit court affirmed the probate court's decision.

**Standard of Review**

"An action concerning the application of the omitted spouse statute is an action at law.  In an action at law, this court and the circuit court may not disturb the probate court's findings of fact unless a review of the record discloses there is no evidence to support them." *In re Timmerman*, 331 S.C. 455, 458–59, 502 S.E.2d 920, 921 (Ct. App. 1998) (citations omitted).  However, on appeal from an action at law tried without a jury, the appellate court will correct errors of law. *Church v. McGee*, 391 S.C. 334, 342, 705 S.E.2d 481, 485 (Ct. App. 2011).

**Analysis**

---

proffer this?  Go ahead."  The record does not reflect whether or how Appellants' counsel responded to the court's question.  Additionally, there are places in the record where some testimony from Appellants' conversations with their father appears to have been elicited outside the proffer.  Because we decide this case based on Stephen's inaction with respect to the conditions within the 2005 documents and the operation of the omitted spouse statute, it is unnecessary to further detail which testimony was proffered versus which was admitted.

Appellants argue the circuit court erred in affirming the probate court's ruling that Mary was entitled to an omitted spouse's share. We disagree.[6]

South Carolina treats with great deference a testator's intent in disposing of his or her property. As our supreme court has explained:

> It is elementary that a testator's intention, as expressed in his will, governs the construction of it if not in conflict with law or public policy and intent is to be ascertained upon consideration of the entire will. In construing the provisions of a will, every effort must be made to determine the intentions of the testator and carry out such intentions. Further, the court must always first look to the language of the will itself.

*In re Est. of Prioleau*, 361 S.C. 627, 631-32, 606 S.E.2d 769, 772 (2004) (citations omitted). In interpreting testamentary documents, "[w]e can neither 'redraft the [w]ill, nor may we doctor a crucial part.'" *In re Est. of Fabian*, 326 S.C. 349, 353, 483 S.E.2d 474, 476 (Ct. App. 1997) (quoting *Limehouse v. Limehouse,* 256 S.C. 255, 257, 182 S.E.2d 58, 59 (1971)).

In some instances, a testator's intent may conflict with South Carolina law or public policy. The General Assembly has provided for surviving spouses omitted from a will executed before the parties married:

---

[6] We reject Mary's argument that Appellants failed to notice their appeal from the order of the probate court granting Mary's petition as an omitted spouse. Appellants' counsel have ably challenged Mary's petition at every stage of this litigation and correctly note section 62-1-308 of the South Carolina Code (2022) governs appeals from the probate court. Appellants' notice identifies the final order from which they appeal, they filed the statement of issues required by § 62-1-308(b) for their appeal to circuit court, and they received the required rulings from both the probate and circuit courts. Moreover, "[w]e are mindful of the need to approach issue preservation rules with a practical eye and not in a rigid, hyper-technical manner." *Palmetto Wildlife Extractors, LLC v. Ludy*, 435 S.C. 690, 705, 869 S.E.2d 859, 867 (Ct. App. 2022) (quoting *Herron v. Century BMW*, 395 S.C. 461, 470, 719 S.E.2d 640, 644 (2011)).

(a) If a testator fails to provide by will for his surviving spouse who married the testator after the execution of the will, the omitted spouse, upon compliance with the provisions of subsection (c), shall receive the same share of the estate he would have received if the decedent left no will unless:

(1) it appears from the will that the omission was intentional; or

(2) the testator provided for the spouse by transfer outside the will and the intent that the transfer be in lieu of a testamentary provision is shown by statements of the testator or from the amount of the transfer or other evidence.

(b) In satisfying a share provided by this section, the devises made by the will abate as provided in Section 62-3-902.

(c) The spouse may claim a share as provided by this section by filing in the court and serving upon the personal representative, if any, a summons and petition for such share within the later of (1) eight months after the date of death, (2) six months after the informal or formal probate of the decedent's will, or (3) thirty days after the omitted spouse is served with a summons and petition to set aside an informal probate or to modify or vacate an order for formal probate of decedent's will. The spouse shall give notice of the time and place set for the hearing on the omitted spouse claim to the personal representative and to distributees and recipients of portions of the probate estate whose interests will be adversely affected by the taking of the share.

§ 62-2-301.

In recognizing the tension between the weight afforded a testator's intent and the provisions of the probate code, our courts have articulated a framework for

considering an omitted spouse claim. In *Green ex rel. Est. of Cottrell v. Cottrell ex rel. Est. of Cottrell*, this court applied a four-part test addressing a surviving spouse's qualification as an "omitted spouse":

> A surviving spouse who wishes to qualify as an "omitted spouse" must demonstrate:
>
> > (1) the decedent spouse executed the will in question prior to the marriage;
> >
> > (2) the will does not provide for her as the surviving spouse;
> >
> > (3) the omission was unintentional; and [sic]
> >
> > (4) the decedent did not provide for the spouse with transfers outside of the will.[7]

346 S.C. 53, 62, 550 S.E.2d 324, 329 (Ct. App. 2001) (quoting Wagner, *supra* note 7, at 983)).

It is undisputed that Mary satisfied the two qualifying requirements by establishing that Stephen executed the Will prior to their marriage and that it does not provide for her. It is likewise undisputed that the Agreement makes no mention of Mary.

The two exclusionary requirements are hotly disputed. Appellants assert Mary's claim must be denied because any argument that her omission was unintentional is defeated by the testimony and exhibits. Obviously, there is no mention of Mary in the Will—Stephen and Mary did not even know each other when Stephen and Nancy executed their documents in 2005. Thus, the Agreement and Will could not have been prepared to intentionally omit Mary (as opposed to some unnamed potential future spouse), as our case law appears to require. *See, e.g., Miles v.*

---

[7] *Green* explains that the "first two criteria are described as 'qualifying' conditions and the latter two as 'exclusionary' conditions." *Green*, 346 S.C. at 62 n.5, 550 S.E.2d at 329 n.5 (quoting David E. Wagner, *The South Carolina Probate Code's Omitted Spouse Statute and In Re Estate of Timmerman,* 50 S.C. L. REV. 979, 984 (1999)). Somewhere along the way, the statutory "or" found between § 62-2-301(a)'s two exclusionary factors was miscast as "and" by the case law. We yield to the statute.

*Miles*, 312 S.C. 408, 411, 440 S.E.2d 882, 883-84 (1994) (holding "a spouse has not been 'provided for' within the meaning of section 62-2-301 unless the decedent considered the surviving spouse *in that capacity* at the time the will was executed").

Had Stephen simply executed the documents required by section 4.2 of the Agreement, Appellants would be in a better position to challenge this outcome. As it stands, evidence supports the probate court's findings as to this factor, and we see no error of law.

The alternate exclusionary factor allows omission of a surviving spouse where "the testator provided for the spouse by transfer outside the will" and "the intent that the transfer be in lieu of a testamentary provision is shown by statements of the testator or from the amount of the transfer or other evidence." § 62-2-301(a)(2). Here, Appellants cannot establish Stephen "provided for" Mary by any transfer outside the will. We find meritless the argument that Stephen's financial contributions to Mary during their life together negate her ability to satisfy the omitted spouse test.

Appellants claim the assets referenced in Brian's testimony serve as a substitute for the support Mary would receive through a spousal share of Stephen's estate. But the nature of two of the listed items actually contravenes Appellants' position that Stephan intended them to provide for Mary in lieu of a bequest. For example, a leased Toyota Camry has little benefit to a nonagenarian under a conservatorship; it is similarly difficult for us to understand the value of a Las Vegas timeshare. And, we do not find the value of the listed non-testamentary transfers sufficient to deem them de facto bequests "in lieu of a testamentary provision" to a spouse from an estate valued in excess of $900,000. *Cf. Timmerman*, 331 S.C. at 459, 502 S.E.2d at 922 (finding transfers of nearly $1.2 million met statutory allowance that "intent can be measured by the amount of the transfers"); *see also Miles*, 312 S.C. at 410-11, 440 S.E.2d at 883 (noting its agreement with those jurisdictions holding "absent specific language in the [w]ill, or sufficient extrinsic evidence that a bequest was made 'in contemplation of marriage,' a spouse has not been 'provided for' under the 'omitted spouse's statute'").

As the record supports the probate court's finding that the evidence did not demonstrate the non-testamentary items Brian identified were intended by Stephen to provide for Mary in lieu of a bequest, we affirm the courts' rulings as to this exclusionary factor as well.

**Conclusion**

For the foregoing reasons, the rulings of the probate court and circuit court are

**AFFIRMED.**

**HILL, A.J., concurs.**

**GEATHERS, J., dissenting:**

I agree with the majority that there is nothing to indicate Stephen intended for any financial support of his fourth wife, Mary, during their life together to be a replacement for a potential bequest. Therefore, Appellants did not show that Stephen provided for Mary by transfer outside the Will. However, I respectfully depart from the majority's conclusion that any evidence supported the probate court's finding that Stephen did not intend to omit Mary from the Will.

Our analysis must be guided by Stephen's intent for the disposition of his estate. We are not here to decide the wisdom or fairness of his wishes—only to discern them. *See Wilson v. Dallas*, 403 S.C. 411, 445, 743 S.E.2d 746, 765 (2013) ("The right to make a will directing the ultimate disposition of one's property is one of the basic rights known to our civilization, and it encompasses the right to make [the will] according to the testator's pleasure and in his absolute discretion, whether judiciously or capriciously, justly or unjustly, subject only to the restraints upon the power of disposition that the law has imposed.").

Honoring the testator's intent is consistent with the omitted spouse statute. "The omitted spouse statute 'attempts to accomplish two ends—carrying out the decedent's probable intent and protecting the still-surviving spouse.'" *Green ex rel. Est. of Cottrell v. Cottrell ex rel. Est. of Cottrell*, 346 S.C. 53, 62, 550 S.E.2d 324, 329 (Ct. App. 2001) (quoting David E. Wagner, *The South Carolina Probate Code's Omitted Spouse Statute and In Re Estate of Timmerman,* 50 S.C. L. REV. 979, 979 (1999)). The omitted spouse statute is meant to ensure that a decedent—who did not update a pre-marriage will to include a new spouse—can have what society believes to be his or her likely intent honored. *See* Wagner, 50 S.C. L. REV. at 994. Importantly, the statute is not meant to supplant the testator's intent; hence, the legislature included in the statute a provision excluding the new spouse from the estate when the omission is intentional. S.C. Code Ann. § 62-2-301(a)(1) (providing that an intentional omission of a surviving spouse from a will bars the surviving spouse from receiving any share of the estate). The statute's assumption is that a person *who has shown no contrary intent* likely means to leave their new spouse

*something*. Here, the only probative evidence in the record shows a contrary intent—to omit a subsequent spouse.

The only evidence in the present case shows that years before he met Mary, Stephen made it clear that he meant to leave a subsequent spouse *nothing*. The significance of the Agreement between Stephen and his third wife, Nancy—and what it says about Stephen's testamentary intent—is that anyone in the role of subsequent spouse was to be excluded from the estate. It matters little that Mary is not *specifically* named in the Will because Stephen contemplated and explicitly omitted any subsequent spouse from receiving anything from the estate. *See Green*, 346 S.C. at 63, 550 S.E.2d at 330 (finding omission was intentional when "[t]he face of the will refers to [the testator's] possible future marriage to [wife,] and the [testator's] Trust Agreement specifically refers to [wife] in her potential capacity as [the testator's] wife"); *see also Wilson*, 403 S.C. at 440–42, 743 S.E.2d at 762–63 (expressing skepticism about an omitted spouse claim because, among other reasons, the decedent's "testamentary documents state that he was specifically omitting any other beneficiaries or potential beneficiaries, *including a future spouse* or heirs, based on his desire to leave most of his estate to charity after providing for the education of his grandchildren" (emphasis added)); *cf. Miles*, 312 S.C. at 410–11, 440 S.E.2d at 883 (agreeing with courts in other states that "absent specific language in the [w]ill, or sufficient extrinsic evidence that a bequest was made 'in contemplation of marriage,' a spouse has not been 'provided for' under the 'omitted spouse's statute'" (footnote omitted)).

The evidence also shows that Stephen's intention to omit a subsequent spouse did not change following Stephen's marriage to Mary. As the majority notes, Mary called one witness, Noble-Kiley, whose testimony consisted only of the date of the parties' marriage, the date of Stephen's death, and her appointment as Mary's conservator. None of this testimony speaks to Stephen's intent for his estate plan. Mary presented no evidence that Stephen contemplated or made any effort to alter his estate plan after their marriage. In contrast, Appellants presented the testimony of Bluestein—the attorney who drafted Stephen and Nancy's wills and the Agreement—and of Stephen's friend, who had conversations with Stephen about the impact marrying Mary would have on his estate plan. Bluestein testified that he would not have drafted a mutual will and trust agreement unless the couple's intent to have it enforced was "crystal clear" and that the effectiveness of the Will is not based on whether it is ratified. The probate court relied on Stephen's failure to ratify the Will and to have Mary waive her rights under the elective share statute. However, this carries no probative value as to Stephen's intent and, thus, does not

negate the overwhelming evidence that Stephen intended to omit Mary from his Will and uphold the Agreement.

Lastly, it is clear from the record that Nancy and Stephen executed a mutual will and intended that Nancy and Stephen's children and heirs receive all remaining assets after their deaths, regardless of which spouse died first. South Carolina law respects mutual wills, which are generally upheld as testamentary instruments demonstrating the intent of the testator. *See generally Pruitt v. Moss*, 271 S.C. 305, 247 S.E.2d 324 (1978) (holding that a mutual will "was the product of a testamentary compact, which became contractually binding on the husband at the time he received benefits under the wife's will"); *see also Looper v. Whitaker*, 231 S.C. 219, 225–28, 98 S.E.2d 266, 269–71 (1957) (reviewing South Carolina cases involving joint mutual wills). Stephen's intent to omit a subsequent spouse is clear from his Will that incorporated by reference the Agreement and was designed as a mutual will with Nancy's. Mary as a subsequent spouse was intentionally omitted from the Will and could not receive any assets from Stephen's estate.

Accordingly, I respectfully dissent.